ALECIA J. LANSING, PROPONENT, v. GERALDINE HAYNES
ET AL., CONTESTANTS.

*Will—Revocation—Change in circumstances of testator—Divorce.*

1. Where, pending a suit by a wife for divorce, the husband conveys to her a portion of his real estate, and she releases by quitclaim deed her interest in the remainder, and both parties execute an agreement by which the husband conveys to her certain personal property, and she releases him from all demands, and agrees to pay the costs and expenses of the divorce suit, and no reference is made in the deeds or agreement to mutual wills executed by the parties about eight years before, by which each devised to the other all of his or her property, said deeds and agreement, while having an important bearing upon an implied revocation of the husband's will, do not constitute the express revocation contemplated by How. Stat. § 5793, which provides for such revocation by some other writing than a subsequent will or codicil, such writing to be signed, attested, and subscribed in the manner provided by the statute for the execution of a will.

2. The changed relations of the parties, brought about by the granting of a decree of divorce to the wife 35 days after the execution of the deeds and agreement, are held to have amounted to an implied revocation of the will of the husband.

Error to Ingham. (Person, J.) Argued January 11 and 12, 1893. . Decided March 10, 1893.

Appeal by heirs from an order of the circuit court, affirming the order of the probate court, admitting a will to probate. Reversed. The facts are stated in the opinion.

*M. D. Chatterton* and *Q. A. Smith,* for contestants and appellants.

*Jay P. Lee,* for proponent and appellee.

GRANT, J. The facts in this case are these: The proponent and Garret Y. Lansing were married in December,

1864. They lived together as husband and wife until 1889, when she filed a bill of divorce against him, and an absolute decree of divorce was rendered in her favor June 6, 1889. He died in September, 1891. They had no children. December 10, 1881, they executed mutual wills, which were identical in language; he devising all his property to her, and she devising all her property to him. By agreement between them, she took possession of both wills, and preserved them until the decree of divorce was rendered, after which she destroyed her own, and deposited his will with her brother. This action on her part was not known to Mr. Lansing. May 2, 1889, pending the divorce suit, she and her husband made a division of his property; he conveying to her by warranty deed certain real estate, and she releasing by quitclaim deed all interest in the remainder of his real estate. On the same day an agreement was executed by them, in duplicate, by which he conveyed to her certain personal property, and she agreed to release him from all demands of every kind or nature, and agreed to pay her own costs and expenses of the divorce suit. It was stated in this agreement that it and the deeds executed by them were intended as a property settlement between them. As is usual in such cases, the feeling between them, at least upon her part, became bitter. She did not speak to him for three months before the decree, nor afterwards. His place of business was three blocks from her home, and she avoided passing by it. After his death she presented his will for probate. The probate court probated the will, and, on appeal to the circuit court, this action was sustained.

The three propositions of the contestants are as follows:

1. That these mutual wills formed a contract, and that the proponent, having revoked her own will, is thereby estopped from claiming under this will.

2. That the deeds and agreement constitute an. express revocation of the will.

3. That the will of the deceased is revoked by implication of law on account of the changed relations of the parties.

1. If these wills constituted a binding contract between the parties, that question cannot be litigated in a contest over the probate of either will. The probate court has no jurisdiction to determine such questions. The two questions for that court to determine were: (1) Was the document presented, at the time of its execution, the last will and testament of the deceased? and (2) had . it been revoked?

2. The statute provides that—

" No will, nor any part thereof, shall be revoked unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence, and by his direction; or by some other will or codicil, in writing, executed as prescribed in this chapter; or by some other writing, signed, attested, and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." How. Stat. § 5793.

No reference whatever is made in the deeds and the agreement to these wills. They have an important bearing upon the question of . an implied revocation, but we do not think that they constitute the express revocation contemplated by the statute.

3. The difficult question is whether the will was revoked by implication.

" Implied revocations are founded upon the reasonable presumption of an alteration of the testator's mind, arising from conditions since the making of the will, producing a change in his previous obligations and duties.   *   *   * There is not, perhaps, any code of civilized jurisprudence in .

which this doctrine of implied revocation does not exist, and apply when the occurrence of new social relations and moral duties raises a necessary presumption of a change of intention in the testator." 4 Kent, Comm. 521. See, also, Smith, Prob. Law, 50; 2 Greenl. Ev. § 684; Woerner, Adm'n, § 48.

It is contended by the proponent that the only changed relations from which revocation can be implied are the marriage of a *femme sole*, and the marriage of a man and birth of issue; and these appear to have been at the common law the two principal reasons for such implication. But this rule was not without exceptions. *Will of Ward*, 70 Wis. 251, and authorities there cited. The revocation must rest upon presumption, not upon intention. Verbal declarations of the testator as to his intentions or understanding are incompetent. *Hoitt v. Hoitt*, 63 N. H. 475 (3 Atl. Rep. 604). The married woman's act is held to have abrogated this rule of the common law as to married women by giving to her the absolute control and disposal of her separate property. *Will of Ward, supra.* So this Court has held that the constitutional provision giving her the right to devise her separate property acquired before marriage, or which she may afterwards acquire by gift, grant, inheritance, or devise, has abrogated this rule. *Noyes v. Southworth,* 55 Mich. 173. So the birth of an illegitimate child, recognized and acknowledged by the father, was held to revoke a will made before the birth of the child. *Milburn v. Milburn,* 60 Iowa, 411 (14 N. W. Rep. 204).

It is held in Ohio that a divorce obtained by the husband does not operate as a revocation of a will made by the husband on the day of his marriage, but before and in contemplation of the marriage. The testator in that case devised to his wife $1,000, and the remainder of his property to his children by a former marriage. It was there said that the legacy did not depend upon the marriage, and could not, therefore, be lost by the divorce; and that

the wife could lose no more by the divorce than she gained by the marriage. *Charlton v. Miller,* 27 Ohio St. 298. So far as we have been able to investigate, this is the only adjudicated case involving the effect of a divorce upon the precise point at issue. That case differs from this, however, in the fact that there had been no settlement, upon the granting of the divorce, of the property rights of the parties. It is also noteworthy that in that case much stress was laid upon the fact that the relations of the parties, at the time of the execution of the will, and at the testator's death, were the same.

In *Tyler v. Tyler,* 19 Ill. 151, it is held that marriage, under a statute making the wife heir to the husband, and the husband heir to the wife, revoked the husband's will made prior to the marriage, and disposing of his entire estate without any provision for her; and this, too, though the marriage was without issue.

By the decree of divorce in this case, the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter. There was, therefore, a complete change in these relations, within the language above quoted from Chancellor Kent. It is not, in my judgment, the natural presumption that, after the testator had settled with her, had conveyed to her a good share of his property, and they, by agreement, had terminated all their property, as well as their marital, relations, the will executed nearly 10 years before should remain in force, and operate upon his death as a conveyance of the remainder of his property to her, to the exclusion of his heirs. If this were so, then it would follow that, if he had children living, or a dependent mother or other dependent relatives, or a second wife without issue, his duties and obligations towards them must be set aside, in favor of a most harsh and unjust rule. The like result would follow where the husband had obtained a divorce from his wife

on the ground of her adultery, and she had become a common · prostitute; or where the wife had obtained a divorce for a like reason, or because her husband had committed a felony, for which he was incarcerated in prison. To hold the will unrevoked under these circumstances would be repugnant to that common sense and reason upon which law is based. I do not think the common law is so unbending as to lead to this result. "The reason of the law is the essence and soul of the law."

Divorces in England were infrequent, and this may well be held to account for the fact that this question has not arisen there for adjudication in the courts. The natural presumption arising from these changed relations is the reasonable one, and the one which in law implies a revocation. The question is not to be controlled by a possible presumption, but by the reasonable presumption. The possibility, therefore, that the deceased might have desired that the remainder of his property should go to his divorced wife, cannot be considered in determining the question of an implied revocation in this case. Such disposition of his property would be unusual, and contrary to common experience.

It follows that the judgment must be reversed, and judgment entered in this Court for the contestants.

The other Justices concurred.