;WILL OF BATTIS: BATTIS, Appellant, vs. MONTABA, Respondent.

*April 9—October 4, 1910.*

*Wills: Implied revocation of bequest: Jurisdiction of county court: Effect of divorce: Evidence as to intent.*

1. After the admission of a will to probate the county court may, on petition, determine whether a certain bequest made therein had been impliedly revoked by subsequent changes in the condition and circumstances of the testator.
2. A divorce accompanied by a final division of the husband's property is such a change in his condition and circumstances as impliedly revokes a provision which he had made in his will for his wife's benefit.
3. In case of such an implied revocation of a will or of a portion thereof, evidence that the testator meant the will to stand as written cannot be received unless it shows a republication.

APPEAL from a judgment of the circuit court for Winnebago county: CHESTER A. FOWLER, Judge. *Reversed.*

On April 28, 1890, Allan P. Battis and the respondent were married. On December, 13, 1902, Allan P. Battis, the testator, made his will. Thereby he gave to a cousin all his interest in his boiler-shop business, the buildings in which it was conducted, and the lots upon which the buildings stood. He gave to Helen Wiesenberg, a stranger, certain bank stock and money or real-estate mortgages sufficient to make the

sum of $8,000. The fourth and fifth paragraphs of the will
are as follows:

"Fourth. I give and bequeath unto my wife *Frances May
Battis,* of the city of Oshkosh, the sum of ten thousand dol-
lars. To have and to hold the same unto her, the said
*Frances May Battis,* her heirs, executors, administrators and
assigns forever.

"Fifth. I hereby give, devise and bequeath unto my
brother, *Martin T. Battis,* of the city of Oshkosh, all the
rest, residue and remainder of my property of every name
and nature, real, personal or mixed, to have and to hold the
same unto him the said Martin T. Battis, his heirs, executors,
administrators and assigns forever."

On July 5, 1903, the respondent secured a divorce from
Allan P. Battis on the ground of cruel and inhuman treat-
ment. The judgment provided that the plaintiff should re-
tain the piano and household furniture, and that the defend-
ant should pay her her disbursements and $2,500 "as her full
and final share and allowance in the final division and dis-
tribution of the estate and property, real and personal, of the
defendant, and that the plaintiff upon payment of said" sum
should be "divested of all right, title, and interest in and to
the property of the defendant, either real or personal." Sub-
sequent to the divorce Allan P. Battis visited at the home of
his former wife, manifested a solicitude for her health and
happiness, and made her small gifts. He also sustained
friendly relations with her mother and family, visited regu-
larly at the home of her mother and sister, made presents to
them, and stated to them that he had made such provision in
his will for his former wife that she would not suffer from
want. To the knowledge of Allan P. Battis, his former wife
married Abe Montaba. On January 16, 1907, Allan P. Bat-
tis was sick and addressed a letter to his former wife's mother,
expressing a desire to see *Frankie* before he died, asked that
she be given his regards, and wished her good luck as long
as she lived. Allan P. Battis died May 4, 1908, leaving no

brothers or sisters except the brother *Martin T. Battis,* and no widow or issue.

The will was admitted to probate. The executor complied with some of the provisions of the will, and, while he still had some $50,000 in his hands for distribution, the residuary legatee, the brother of the deceased, petitioned the county court to have it adjudged that the divorce and the final distribution of the estate and property of Allan P. Battis in 1903 had annulled and revoked the fourth paragraph of his will, and that the residue of the estate, after compliance with the other provisions of the will, should be awarded to the petitioner. The county court entered judgment adjudging that the bequest to the respondent was annulled by the divorce and final division and distribution of the estate and property of Allan P. Battis and that *Frances May Montaba* should take nothing under the will. Upon appeal to the circuit court the court entered judgment dismissing the petition. This is an appeal from the judgment of the circuit court.

For the appellant there were briefs by *Weed & Hollister,* attorneys, and *Charles Barber,* counsel, and oral argument by *Mr. H. I. Weed* and *Mr. Barber.*

For the respondent there was a brief by *Eaton & Eaton,* and oral argument by *M. H. Eaton* and *F. J. Eaton.*

The following opinion was filed April 26, 1910:

SIEBECKER, J. The respondent avers that the admission of the will to probate precludes the appellant by his petition from invoking the power of the court to declare the fourth paragraph of the will to have been revoked and annulled. The argument is made that the admission of the will to probate established the whole writing and made it operative and effective in all its parts, and hence that appellant cannot in this manner establish a revocation of any part thereof. The question raised by the petitioner is whether or not paragraph 4

of the will was revoked by the judgment awarding a divorce
between the husband and wife, and, pursuant to sec. 2364,
Stats. (1898), a final division and distribution of the testa-
tor's estate. No attempt is made to annul the probate of the
will or to have the will declared ineffective because of its
revocation. It need not, therefore, be determined whether
this proceeding would lie to assail a will in its entirety after
probate. The inquiry for determination is whether this is
a proper and appropriate proceeding wherein the court may
ascertain whether or not paragraph 4 of the will was revoked
by the subsequently changed condition and circumstances of
the testator respecting his relations to his divorced wife.
This in no way affects the validity of the other parts of the
will, its execution, or the admission to probate. Manifestly
the writing probated embodies the will of the testator. If
paragraph 4 is found to have been annulled under the con-
dition and circumstances submitted to the court, all the other
parts of the writing will stand as the will of the testator.
In the proceeding admitting the will to probate the question
actually presented to the court was whether the writing pro-
pounded as decedent's will was entitled to probate, and no
other question was presented. The determination of this
question in no way specifically included a determination re-
specting the annulment of paragraph 4. The legal effect and
the validity of the contents of the writing are not involved.
As a matter of practice, such questions are usually consid-
ered separately in probate and administration proceedings.
*Farmer v. Sprague,* 57 Wis. 324, 15 N. W. 382. The stat-
utes impose on the county courts the duty of ascertaining what
persons are entitled to receive a testator's estate under his
will. This necessarily involves a determination of whether
any part of the writing presented as the will should be re-
jected as annulled, in order that distribution of the estate may
be directed pursuant to the effective parts of the writing.
This proceeding appropriately presents these considerations

to the court.    We are therefore of opinion that appellant's
petition was properly entertained, and that the court thereby
acquired jurisdiction to determine whether this paragraph of
the written paper admitted to probate as the will had been
impliedly revoked and annulled under the provisions of
sec. 2290, Stats. (1898), by the changed condition and cir-
cumstances of the testator subsequent to the making of the
will.

This section enacts that no will shall be revoked except as
therein provided, with the intention of revoking it; "except-
ing only that nothing contained in this section shall prevent
the revocation implied by law from subsequent changes in the
condition or circumstances of the testator."    In *Will of
Ward,* 70 Wis. 251, 35 N. W. 731, it was held that this excep-
tion from the operation of this section "manifestly means
such as had previously been implied at common law."    *Will
of Lyon,* 96 Wis. 339, 71 N. W. 362; *Glascott v. Bragg,* 111
Wis. 605, 87 N. W. 853.    These cases call attention to the
fact that in the common law the marriage of a female, and the
marriage and birth of issue in case of a man, were recognized
as "subsequent changes in the condition or circumstances of
the testator," which implied a revocation of the will.    The
appellant contends that this exception was not intended to be
limited to those cases which had arisen for adjudication in
the courts prior to the adoption of the statute law of this state,
but that the statute is declaratory of a rule of justice imposed
on testators respecting the disposition of their property by
will in the light of their relations and duties toward persons
who would naturally be the objects of their bounty.    The de-
cisions of the courts of this country are not in harmony as to
the application and scope of the rule.    There has been much
discussion of the subject in various jurisdictions, and we call
attention to the foregoing cases in this court and the following
recent adjudications in other jurisdictions: *Lansing v.
Haynes,* 95 Mich. 16, 54 N. W. 699; *Wirth v. Wirth,* 149

Mich. 687, 113 N. W. 306; *Baacke v. Baacke,* 50 Neb. 18, 69 N. W. 303; *Estate of Brown,* 139 Iowa, 219, 117 N. W. 260; *Donaldson v. Hall,* 106 Minn. 502, 119 N. W. 219. What subsequent changes in the condition and circumstances of the testator revoke a will or a part thereof by implication, within the rule embodied in this statute, has commonly been applied to a change in the testator's property, in his family, or in the beneficiaries. See note to *Graham v. Burch,* 28 Am. St. Rep. 339, 356 (47 Minn. 171). The rule rests on the idea that the changed condition and circumstances of the testator respecting his property, his family, or beneficiaries, imposing different moral and legal duties, affords strong evidence that the testator intended that his will should become revoked as to the provisions affected by such subsequent change in the testator's condition and circumstances.

Is the change in the condition and circumstances of one who has made a will, brought about by a divorce accompanied by an adjudication making a final division and distribution of his estate, both real and personal, as between him and his wife, in the light of their legal and equitable rights, their character and situation under all the circumstances of the case, of such probative force as to sustain the conclusion that the husband intended that the provision he had theretofore made in his will for his wife's benefit should be revoked thereby? The change in the condition and circumstances of a testator incident to a separation of the parties and a division and distribution of the husband's estate operates to produce a complete destruction of their legal and moral relations and consequent obligations and duties. It is difficult to conceive of a condition and circumstances which are pregnant with as strong an intent to annul the testamentary provision made for the benefit of a testator's wife and from which he would be led to conclude that the wife's claim upon his estate and his bounty had been fully discharged. These changed conditions and circumstances of a testator are of a nature which natu-

rally implies a different intent respecting his wife as the object of his bounty.    The decree divorcing them and awarding a final division and distribution of his estate makes them strangers to each other, and the bestowal on her of such a portion of his estate as he ought in justice and right under the conditions and circumstances to bestow on her operates to discharge all his moral and legal duties toward her.    It was upon such considerations that courts acted in establishing the doctrine of implied revocation of wills.    The changed condition and circumstances of a testator thus brought about are of a nature and, in effect, of such probative force as to imply that the testator intended that the testamentary provisions theretofore made for the wife should become revoked thereby.

At the trial respondent offered evidence to show that after the divorce the testator entertained a friendly feeling for his former wife and did things evincing affection for her, and that he declared to her mother and sister that he had made provision in his will for her comfort and needs for the remainder of her life.    It is contended that this evidence was competent to rebut any presumption of implied revocation of the provision made for her in the will.    In many of the earlier English and American cases the right to rebut the presumption of such revocation was recognized.    In recent times, however, this right has been denied in many cases.    An exhaustive and full discussion is found in *Brush v. Wilkins,* 4 Johns. Ch. 506; *Marston v. Roe,* 8 A. & E. 14, and cases cited above.    In *Glascott v. Bragg,* 111 Wis. 605, 607, 87 N. W. 854, this court in commenting on this phase of this question stated:

"The earlier cases seemed to go upon the theory that such marriage and birth raised a mere presumption of an intent to revoke, but the rule held in the later cases was finally confirmed in the Privy Council in the last case cited (*Israell v. Rodon,* 2 Moore P. C. 51), where it was expressly held that 'marriage and birth of a child do not afford presumptive evidence of intention to revoke, but are in themselves an abso-

lute revocation of a will made previous to the marriage but not in contemplation of it.' "

This declaration gives approval to the rule that must be deemed to have been applied in the case then under consideration. We have discovered no good and sufficient reason to depart from the rule thus applied in this court, and hence must hold that evidence cannot be received to rebut the presumption of an implied revocation of the provision in a will, or to show that the testator meant his will to stand as written, unless such evidence amounts to a republication of it. It is not claimed that the evidence offered shows that the testator republished his will after being divorced from his wife. In *Wirth v. Wirth,* 149 Mich. 687, 113 N. W. 306, the question was presented to the court in a case like the instant one. The holding of the court is stated in the headnote, as follows:

"A divorce and settlement of their property rights between husband and wife operates *ipso facto* to revoke his will previously made, and no subsequent act of the testator not accompanied by the solemnities requisite for the making of a valid will will revive it."

The evidence offered by the respondent is not proof that the testator revived the provision in the will which had been revoked by the divorce proceeding.

These considerations lead to the conclusion that the circuit court erred in dismissing the proceeding on the petition of *Martin T. Battis.*

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the circuit court with directions that the court enter judgment affirming the judgment of the county court of Winnebago county.

Upon a motion for a rehearing there was a brief for the respondent by *Eaton & Eaton,* attorneys, and *Collins & Eaton,* of counsel; and for the appellant a brief by *Weed & Hollister.*

The motion was denied October 4, 1910.