*In re* McGRAW'S ESTATE.

APPEAL OF McGRAW.

1. WILLS—COMMON-LAW PRESUMPTION OF REVOCATION RETAINED.
   The Michigan statute (3 Comp. Laws 1915, § 11825) has expressly retained the common-law presumption of implied revocation of wills in certain cases.

2. SAME—PROPERTY SETTLEMENT NOT CONTROLLING.
   While a property settlement between divorced parties has its influence as an incident to aid the presumption of revocation of the husband's will in his wife's favor, it is only an incident, and ought not to be regarded as a controlling element.

3. SAME—CIRCUMSTANCES UNDER WHICH WILL PRESUMED TO BE REVOKED.
   Where testator made a will in his wife's favor and nearly three years later she secured an absolute divorce from him in another State without asking for or obtaining any property settlement or award of alimony, the circumstances that testator and his wife lived together only about eight years, that they had no children, that she did not help him earn the fortune which he left but it came to him from his father's estate after the divorce was granted, and that he had near relatives living, his mother, brother, and two sisters, *held*, sufficient upon which to presume an implied revocation of his said will.

4. SAME—RIGHT TO DOWER AND ALIMONY WAIVED.
   Where the statute under which the wife obtained her divorce made it incumbent on her to proceed within six months after the decree for an award of dower, and

On effect of settlement of property rights between husband and wife on account of divorce as implied revocation of will, see note in 20 L. R. A. (N. S.) 1073.

On effect of divorce as affecting will previously executed by husband or wife, see note in 25 A. L. R. 49.

*Continued from Vol. 227.

the time expired without any application therefor being made, and she never made any claim for dower or alimony, she is *held*, to have waived said right.

5. SAME—WAIVER OF DOWER AND ALIMONY AMOUNTS TO PROPERTY SETTLEMENT.

The waiver by a divorcee of her right to dower and alimony, *held*, to amount to a settlement of their property matters as effectually as though a voluntary settlement had been effected between them pending the divorce proceedings, thus rendering applicable the rule followed in this State that in case of a property settlement the husband's will in his wife's favor is presumed to be revoked.

Error to Oakland; Gillespie (Glenn C.), J.     Submitted April 11, 1924.     (Docket No. 58.)     Decided July 24, 1924.

Mary Heath McGraw presented for probate the last will of Howard A. McGraw, deceased.     The will was allowed in the probate court, and William H. McGraw and another appealed to the circuit court.     Judgment for proponent on a directed verdict.     Contestants bring error.     Reversed.

*Dohany & Dohany* and *Edward G. Kemp*, for appellants.

*John J. Gafill, Frederick T. Harward*, and *Clinton McGee*, for appellee.

BIRD, J.     This controversy involves the validity of the last will of Howard A. McGraw, deceased. Howard A. McGraw was married to proponent, Mary Heath McGraw, November 15, 1912.     On June 27, 1918, he executed the will in question, making his wife sole legatee.     In August, 1920, his wife filed a bill in the courts at Providence, Rhode Island, praying for a decree of divorce from him.     A copy of the bill was served upon Howard A. McGraw in Michigan. He made no defense.     On March 30, 1921, a decree of absolute divorce was entered.     In June, 1923,

Howard A. McGraw died, leaving an estate of approximately $70,000.   He left no children.   A few days after his death Mary H. McGraw produced the will in question and petitioned the probate court of Oakland county for its allowance.   William H. McGraw and his sister, Elizabeth, contested its allowance on the ground that the decree of divorce, with its attendant conditions or circumstances, had wrought an implied revocation of the will.   This is the contention of contestants in this court.   The position of proponent is that there is nothing here except the decree of divorce from which a revocation can be implied, and that a decree of divorce alone is not sufficient, as a matter of law, to work an implied revocation.   The trial court sustained the will.

Our statute has expressly retained the common-law presumption of implied revocation of wills in certain cases.   It is included in our statute outlining in what manner wills may be revoked:

"No will nor any part thereof shall be revoked, unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; or by some other writing, signed, attested and subscribed in the manner provided in this chapter for the execution of a will; *excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator.*"   3 Comp. Laws 1915, § 11825.

The italicized portion of the statute quoted is the material part to this issue.   It is argued by proponent that the fact of divorce alone is not such a change of conditions or circumstances as to work an implied revocation of the will, and it is pointed out that in the two Michigan cases wherein wills have been impliedly revoked, there was accompanying the

divorce a property settlement between the parties before the divorce was granted. That there was no settlement in the present case and, therefore, it presents the bare question whether divorce alone is sufficient to work an implied revocation.

Contestants concede that in the Michigan cases a property settlement was made by the parties before divorce, but insist that the property matters of the parties in the present case were settled by operation of law and, therefore, the present case cannot be distinguished from the Michigan cases. It may be profitable to examine the Michigan cases for a moment before proceeding to a consideration of the change in the conditions or circumstances.

In *Lansing* v. *Haynes*, 95 Mich. 16 (35 Am. St. Rep. 545), Lansing had been married about a quarter of a century when Mrs. Lansing filed a bill for divorce. In December, 1881, they executed mutual wills. After the decree was rendered she destroyed her will and kept his. Pending the divorce proceedings they settled their property matters. In 1891, Lansing died and his will making his wife sole legatee was offered for probate. It was contested on the ground that the divorce with the attendant circumstances had impliedly revoked the will. This court so held. In doing so, it was observed:

"'Implied revocations are founded upon the reasonable presumption of an alteration of the testator's mind, arising from conditions since the making of the will, producing a change in his previous obligations and duties. * * * There is not, perhaps, any code of civilized jurisprudence in which this doctrine of implied revocation does not exist and apply when the rules of new social relations and moral duties raises a necessary presumption of a change of intention in the testator.' 4 Kent, Comm. p. 521 (citing authorities).

"By the decree of divorce in this case, the parties became strangers to each other, and neither owed to the other any obligation or duty thereafter. There was, therefore, a complete change in these relations,

within the language above quoted from Chancellor Kent. * * * To hold the will unrevoked under these circumstances would be repugnant to that common sense and reason upon which law is based. I do not think the common law is so unbending as to lead to this result. 'The reason of the law is the essence and soul of the law.' * * *

"The natural presumption arising from this changed relation is the reasonable one, and one which in law implies a revocation. The question is not to be controlled by a possible presumption, but by the reasonable presumption. The possibility therefore, that the deceased might have desired that the remainder of his property should go to his divorced wife, cannot be considered in determining the question of an implied revocation in this case. Such a disposition of his property would be unusual and contrary to common experience."

The same question was later raised in *Wirth* v. *Wirth,* 149 Mich. 687. Wirth was married in 1876. In 1892 he executed his will, making his wife sole legatee. In May, 1899, the wife obtained a divorce. Pending the proceedings they settled their property matters. In 1905 Wirth died and an attempt was made to probate his will. The court held the will was impliedly revoked, and that the presumption arising from the changes in circumstances and conditions was not a rebuttable presumption, but was a conclusive one. The case of *Lansing* v. *Haynes, supra,* was followed.

Proponent's counsel argue at length that it was the divorce, plus the property settlement, which wrought the change, and that divorce alone will not effect such a change in the conditions or circumstances as will impliedly revoke the will.

Contestants meet this by showing the Rhode Island statute making it incumbent on a divorcee to proceed within six months after decree for an award of dower. This time expired without any application. The bill of complaint did not pray for alimony and no applica-

tion therefor was ever made. This, in effect, contestants argue, settled the property matters and places the present case within the holding of the two Michigan cases.

There has been some discussion by the courts elsewhere whether *Lansing* v. *Haynes* did not hold that revocation of wills might be implied from divorce alone. And the question is discussed in the present case. It is quite evident that in the two Michigan cases there is no such holding, because the element of settlement was present in both cases. What the views of this court might be on the bare question of divorce unattended by proof of any material conditions or circumstances is a question unnecessary at this time to decide. It is conceivable that a decree of divorce might be presented, attended by such conditions and circumstances as would not justify the presumption of revocation. On the other hand, a decree might be presented, attended by conditions or circumstances, which might entirely justify indulging the presumption.

In the present case the question of voluntary settlement by the parties has been treated by proponent as essential to a finding that the will was revoked. I am not impressed with this contention. Too much importance is placed by counsel upon the presence or absence of a settlement of the property matters by the parties. True, the fact of a voluntary property settlement has its influence as an incident, but it is only an incident like many other facts, to aid the presumption of revocation. In the ordinary divorce case there is much ill-feeling and rancor. Both parties have their grievances, and it is a fact well known to practitioners that the defendant husband makes the best property settlement he can. He pays no more than he is obliged to. If he makes a voluntary settlement it is based on what his counsel thinks the trial court will allow under all the circumstances. Oc-

casionally a defendant may willingly do the equitable thing and pay larger alimony than the court would allow, but he is the exception that proves the rule. In view of this why set up the exceptional or ideal man, and from what he would do draw a presumption as to what all other divorce defendants would do? This would be merely a possible presumption which is not sufficient. *Lansing* v. *Haynes, supra.* It must be a reasonable presumption. *Id.* One based upon what the ordinary divorce defendant would do under given set of circumstances. The fact that the parties have made a property settlement should be influential in raising the presumption, but it ought not to be regarded as a controlling element.

If the circumstances or conditions changed sufficiently to raise the presumption of revocation, what were they? Counsel for contestants say that when Howard A. McGraw made his will Mary H. McGraw was his wife; she was his heir at law; she was the object of his bounty; it was his duty to maintain and support her; he owed her all the legal and moral duties growing out of the marital relation. That after the divorce and at the date of his death Howard A. McGraw was released from all these duties, legal and moral, and was as a stranger to proponent.

In addition to these considerations we might add that if Howard and his wife had had infant children, and after divorce she had the burden of their care, support and education, he might have been willing to allow the will to remain unrevoked.

Had proponent lived with Howard A. McGraw a quarter of a century and helped him to earn his fortune, it might be argued that he was willing to permit the will to stand, notwithstanding the decree of divorce. But in this instance she did not help him earn the fortune which he left. It came to him from his father's estate after the divorce was granted.

Again, if Howard had had no near relatives, that

might have influenced him to refrain from destroy-
ing his will.    At the time of his death his aged
mother and a young sister were living.    Besides these
a brother and sister, the contestants, were living.    It
seems improbable that Howard should have preferred
to have his fortune go to a wife who had brought
him no children, and had gone hither to a foreign
State and secured a divorce rather than to his own
blood, and especially is this improbable in view of the
fact that the fortune came from his father's family.

I am of the opinion that the conditions and cir-
cumstances attending the decree of divorce are suf-
ficient upon which to presume an implied revocation
of his will.

In addition to this, however, we are of the opinion
that proponent waived her dower and alimony.    The
dower is barred by the statute of limitations.    She
demanded no alimony.    If a person be entitled to a
thing of value, and knows it, but makes no demand
for it, we may safely presume that she did not desire
it, or that she had agreed not to ask for it.    Upwards
of two years elapsed after decree in which she might
have demanded alimony, but she made no claim to it.
Is it not probable that, as she grew weary of the con-
ditions under which she was living, and longed to re-
turn to the stage and to secure her freedom, she ex-
changed for it her dower and alimony rights, as is so
frequently done in divorce cases?    We think it would
be doing her no injustice to hold that she had waived
what she was entitled to but never asked for.

With both dower and alimony waived, the property
matters of these parties were as effectually settled as
though they had made a voluntary settlement between
themselves pending the divorce proceedings.    This
being true, the case comes squarely within the two
Michigan cases referred to.

Cases from other State courts have been discussed.
They are not numerous, only twelve have been found.

Those States following *Lansing* v. *Haynes* and *Wirth* v. *Wirth, supra,* have the same common-law rule of implied revocation.    The cases following *Lansing* v. *Haynes* and *Wirth* v. *Wirth,* are *Donaldson* v. *Hall,* 106 Minn. 502 (119 N. W. 219, 20 L. R. A. [N. S.] 1073, 16 Ann. Cas. 541, 130 Am. St. Rep. 621) ; *Battis* v. *Montava,* 143 Wis. 234 (126 N. W. 9, 139 Am. St. Rep. 1101) ; *Bartlett* v. *Lahr,* 108 Neb. 681 (190 N. W. 869) ; *Martin* v. *Martin,* 109 Neb. 289 (190 N. W. 872).

Other States which have not retained the common-law rule are somewhat at variance with the other cases principally because of statutory inhibition, although Iowa appears to have adopted it by judicial construction.    These cases are *In re Jones' Estate,* 211 Pa. 364 (60 Atl. 915, 69 L. R. A. 940, 3 Ann. Cas. 221, 107 Am. St. Rep. 581) ; *Succession of Cunningham,* 142 La. 702 (77 South. 506) ; *In re Brown's Estate,* 139 Iowa, 219 (117 N. W. 260) ; *Card* v. *Alexander,* 48 Conn. 492 (40 Am. Rep. 187) ; *Charlton* v. *Miller,* 27 Ohio St. 298 (22 Am. Rep. 307) ; *Baacke* v. *Baacke,* 50 Neb. 18 (69 N. W. 303).

The industry of counsel in this case is to be commended.    Their presentation of the case, both in the argument and briefs, has been very helpful to the court.

The judgment of the trial court is reversed and a new trial ordered, with costs to contestants.

Clark, C. J., and McDonald, Sharpe, Moore, Steere, Fellows, and Wiest, JJ., concurred.