*In re* BLANCHARD'S ESTATE.

WILLS—IMPLIED REVOCATION—PROPERTY SETTLEMENT.
Property settlement agreement between parties made shortly
previous to divorce proceedings that were later discontinued
*held,* not to work implied revocation of bequests to wife in
testator's previously made will, where she had returned to and
was living with him at time of his death and he had visited
the office of the attorney who had possession of the will many
times after the settlement was made without altering the will.

Appeal from Ingham; Carr (Leland W.), J. Sub-
mitted April 6, 1934. (Docket No. 66, Calendar
No. 37,661.) Decided June 4, 1934.

Mabel W. Blanchard presented for probate the
last will and testament of George Blanchard, de-
ceased. From order admitting entire will to probate
over objections of Roy L. Blanchard, residuary
legatee, he appealed to circuit court. Judgment for
proponent. Contestant appeals. Affirmed.

*A. M. Cummins,* for appellant.

*Walter O. Estes,* for appellee.

NELSON SHARPE, C. J. George Blanchard, of Wil-
liamston, executed his last will and testament in due
form on the 27th day of April, 1932. In it he devised
and bequeathed to his wife, Mabel Blanchard, a life
estate in the home occupied by them and the con-
tents thereof. He then devised and bequeathed cer-
tain real and personal property to the Central Trust
Company, of Lansing, with the usual powers as to
investment, the net income of which was to be paid

to his wife during her lifetime. The following then appears therein:

"In case of the termination of the marriage relation between myself and my said wife prior to my death, the foregoing provisions to be null and void."

Other bequests were made, and the residue was left to his son, Roy L. Blanchard.

The testator died on April 28, 1933. When his will was offered for probate, Roy L. Blanchard filed an objection thereto—"Insofar as the provisions relating to Mabel W. Blanchard are concerned for the reason that said provisions were revoked by a property settlement made and entered into between said George Blanchard and said Mabel W. Blanchard on the 26th day of November, 1932."

The objection was overruled by the judge of probate and the will admitted to probate. An appeal was then taken to the circuit court and, after a hearing thereon, an order was entered admitting it to probate, from which the contestant, Roy L. Blanchard, has taken this appeal.

Soon after the execution of the will, the testator instituted proceedings for a divorce, but there was a reconciliation in June, 1932, and the suit was discontinued. In the fall of that year, they again separated, and on November 26, 1932, an agreement was entered into between them which, after reciting that they had separated and were desirous of making a settlement of all property matters and of the right of the wife to support and alimony in any proceedings which might be instituted by either of them for a divorce, provided that the deceased should convey to his wife certain real estate in the city of Lansing and certain shares of the capital stock in a bank at Williamston and pay to her certain money, and that she should, in consideration

thereof, accept the same in full settlement of any rights she then had as his wife in his property, "including the full release of dower in any real estate owned by him or hereafter acquired, and that she will execute and deliver, in addition to the execution of this agreement, a full and complete release of all dower rights."

It was further agreed that the deceased was released from all obligations to support or maintain his wife, and that the agreement should be a complete bar to any claim for alimony or expenses in case either party should thereafter file a bill for divorce.

It is admitted that the deed was executed and delivered and the bank stock transferred and the money paid, as provided for in the agreement, and a quitclaim deed releasing her claim of dower which she might have as his wife or widow in his real estate executed by her.

Four days later Mrs. Blanchard filed a bill for divorce. This suit was discontinued in January, 1933. She testified that about three months before his death the testator came to her and got her to go back and live with him and that they then lived together in their home in Williamston until his death.

It also appears that the testator was in the office of the attorney who drew the will and had possession of it, and who acted for him in other matters, a number of times after the property settlement was made.

Section 13486, 3 Comp. Laws 1929, provides that no will, nor any part thereof, shall be revoked except by its destruction or by the execution of another will or codicil "excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."

It is the claim of the contestant that, from the execution of the settlement agreement and performance by them thereunder, revocation of the provisions in the will in favor of the wife will be implied.

This court has on two occasions been called upon to decide whether a will was impliedly revoked by "subsequent changes in the condition or circumstances of the testator." In *Lansing* v. *Haynes,* 95 Mich. 16 (35 Am. St. Rep. 545), a husband and wife had made mutual wills in favor of each other. During the pendency of a divorce suit between them, in which she later obtained a divorce, a property settlement was effected somewhat similar to that made in this case. The husband died without revoking his will, and it was held, under the statute, that it was impliedly revoked. The court said:

"The revocation must rest upon presumption, not upon intention. * * * By the decree of divorce in this case, the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter."

A similar question was presented in *Wirth* v. *Wirth,* 149 Mich. 687, and it was held that the "divorce and settlement operates *ipso facto* to revoke the will."

Many cases from other courts are cited by counsel, in which one or both of these cases are referred to, and a similar conclusion reached. In all of them, so far as we have been able to find, the fact that a divorce has been granted and the husband relieved thereby of any duty which he owed to his former wife is stressed and decision rested thereon.

The settlement in this case was doubtless made in the expectancy that a divorce would be granted. The parties, however, later resumed their marriage

relations and were so living together at the time of his death. While intent is not controlling, it is significant that the deceased on many occasions after the settlement was made visited the office of his attorney who had the will in his possession, and made no change in it.

The decree is affirmed, with costs to appellee.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.