(No. 24915.—

NANCY GARTIN *et al.* Appellees, *vs.* GLADYS ELTA GARTIN, Appellant.

*Opinion filed February 15, 1939—Rehearing denied June 7, 1939.*

WILSON and JONES, JJ., dissenting.

JOHN B. FRUCHTL, for appellant.

CHARLES J. TRAINOR, for appellees.

Mr. CHIEF JUSTICE SHAW delivered the opinion of the court:

Gladys E. Gartin appeals from an order of the Appellate Court for the First District affirming a decree of the circuit court of Cook county setting aside the will of Charles Gartin.

Charles and Gladys E. Gartin were married in 1915 and lived together as husband and wife until 1935. No children were born to the union. On May 13, 1935, Gladys Gartin filed a bill for divorce against Charles Gartin, and one year later was granted a decree on the grounds of extreme and repeated cruelty. Under the terms of this decree she received certain personal effects. The decree of divorce ordered a certain alimony to be paid, but none was ever received by Mrs. Gartin. Approximately one month after

the divorce was granted, Charles Gartin died, and in June, 1936, Gladys Gartin sought to probate his will which had been executed on July 10, 1929. The will was admitted to probate and Gladys Gartin appointed executrix.

Subsequently, Nancy Gartin and Anna Mae Arnold, mother and sister of the deceased, respectively, the appellees here, filed this complaint against appellant, Gladys Gartin, to set aside the will of Charles Gartin. They also sought to set aside an order admitting the will to probate. The trial court held that the will of Charles Gartin was revoked by implication of law and ordered the will set aside. The Appellate Court affirmed the decree of the lower court and the case is now before us by appeal, on leave granted.

The only issue to be determined is whether the divorce granted to Gladys Gartin revoked the will of Charles Gartin, executed while the marriage relationship existed. Appellees insist that a divorce constitutes such a change of circumstances as to imply a revocation of the will by law.

Our statutes make express provision for the manner in which a will may be revoked. Section 17 of the Wills act (Ill. Rev. Stat. 1937, chap. 148, par. 19) reads: "No will, testament, or codicil shall be revoked, otherwise than by burning, cancelling, tearing, or obliterating the same by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator, or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law." Section 10 of the Descent act, (Ill. Rev. Stat. 1937, chap. 39, par. 10,) expressly provides: "and a marriage shall be deemed a revocation of a prior will."

The statutes are silent as to the revocation of wills in any other manner. It is only fair to assume that if the

legislature had intended that a divorce should effect a revocation of a will it would have so expressly provided. The action of the legislature, in expressly providing the means for effecting a revocation of a will, precludes the application of the doctrine of implied revocation in case of divorce.

The argument of appellees, and the opinion of the Appellate Court, rely upon certain language in *Phillippe* v. *Clevenger*, 239 Ill. 117, and upon a Michigan case to be referred to later. Certainly, the language in the *Phillippe case*, if considered without reference to what was actually held and decided in that case, is broad enough to sustain the judgment under review. So, also, is the Michigan case, if considered apart from the statute of that State. It is, therefore, important to examine these authorities with some care.

In the *Phillippe case* the testator had made a specific devise of a particular eighty-acre tract of land to his daughter, and about a year and one-half afterward conveyed the identical tract to her by warranty deed under which she took possession. The daughter held title for nearly four years and then reconveyed to her father, who died the owner of the tract. It was held, in that case, that the conveyance of the property to the daughter constituted a "revocation" of the specific devise, and that the reconveyance to the father did not revive it. It is not necessary to a decision of the present case to further consider the correctness of that holding, because no such case is before us, but only to analyze the language used and the cases and authorities there relied upon. (Compare *Strang* v. *Day*, 362 Ill. 110, in which the *Phillippe case* was held not to apply to general devises.) The section of the act in regard to wills which provides for the manner of their revocation was in force then as it is now and has been since 1845, and was cited by the court in its opinion. We went on, however, to say, "in a number of cases decided by this court since that time wills have been held to have been revoked, in whole or in part, by the acts of the maker of the will which do not fall within

the provisions of said section 17—that is, they have been held to have been revoked by implication." In support of this statement five cases are cited, *Tyler* v. *Tyler,* 19 Ill. 151, *In re Tuller,* 79 id. 99, *Updike* v. *Tompkins,* 100 id. 406, *Duryea* v. *Duryea,* 85 id. 41, and *American Board of Foreign Missions* v. *Nelson,* 72 id. 564. The earliest of these, the *Tyler case,* was a revocation by marriage and was decided under the common law because at that time the statute of 1872, providing that marriage should revoke a former will, had not yet been passed. The *Nelson case* is exactly the same. The *Tuller case* was likewise one of possible revocation by marriage, although revocation was denied and the holding in the *Tyler case* was expressly limited in certain respects not now material. That case was also concerned with facts that occurred and rights that accrued prior to the act of 1872. The *Updike case* holds that where a specific article is bequeathed, its sale, loss or destruction cannot be replaced by substituting another article in its stead.

This brief examination of the *Phillippe case,* and the authorities on which it relies, makes it clear that it is not a decisive authority for our present action, nor do we feel ourselves bound by the full breadth of the language used in that opinion—language which said rather more than was necessary to the decision of the case then under consideration. Many other cases have used the term "revocation by implication," but none of them, except cases of marriage subsequent to the will, have considered the revocation of an entire will, and none of them, in this State, have considered the effect of a subsequent divorce. On that point this seems to be a case of first impression.

In other jurisdictions in which the legislature has enacted a statute like ours providing for the revocation of wills the courts have almost universally held that the divorce of a testator does not constitute a revocation. *In re Jones' Estate,* 211 Pa. 364, 60 Atl. 915; *Murphy* v. *Marks,* 98 N. J. Eq. 153, 130 Atl. 840; *In re Brown,* 139 Iowa, 219,

117 N. W. 260; *Davis* v. *Fogle,* 124 Ind. 41, 23 N. E. 860; *Card* v. *Alexander,* 48 Conn. 492, 40 Am. Rep. 187.

The appellees have cited certain authorities to substantiate their contention that a divorce impliedly revokes a will. Among them are: *Lansing* v. *Haynes,* 95 Mich. 16, 54 N. W. 699; *Donaldson* v. *Hall,* 106 Minn. 502, 119 N. W. 219; *In re Will of Battis,* 143 Wis. 234, 126 N. W. 9. It must be noted that the statute in each of the jurisdictions in which these cases originate allows the court to determine whether the subsequent changes in the condition or circumstances of the testator are sufficient to work an implied revovation of the will. More precisely, the statutes in such jurisdictions (after enumerating the ways by which a will may be revoked) provide: "excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." (Mich. Comp. Law (1929) "Wills," chap. 268, sec. 13486, p. 4829; Minn. Stat. "Probate Courts," chap. 74, sec. 8741; Wis. Stat. (1935) "Wills," chap. 238, sec. 238-14, p. 2244.) For this reason the cases cited are not in point.

In order clearly to segregate the points involved, two distinctions are necessary. First, that since 1872, in Illinois, a marriage revokes a prior will, not by implication, but by statute, and second, that the loss, destruction or conveyance of the subject matter of a specific devise is not truly a revocation at all, but merely the withdrawal of the thing specifically devised from the operation of the will. (28 R. C. L. 193.) As to the cases from other jurisdictions, as above pointed out, in so far as they differ in result from our present holding, that difference is well justified by the variance in statutory provisions. Bearing in mind the distinctions we now make, what we now hold is in complete harmony with all of our prior decisions, although it will be necessary to disregard the language of some cases where it has gone beyond the necessity of the occasion for its use.

No evidence has been offered tending to show any act of the testator subsequent to the making of his will which would amount to a statutory revocation, and nothing less than such a statutory act can accomplish that result, no matter what his intention or circumstances may have been. To hold that the divorce revoked the will of Charles Gartin would be contrary to statutory provision, and if such a rule is to be adopted, it must come from the legislative department of the government. The will under consideration was not revoked by implication and the circuit and the Appellate Courts erred in so holding.

The decree of the circuit court and the judgment of the Appellate Court are each reversed.

*Decree and judgment reversed.*

Mr. JUSTICE WILSON dissenting:

I am unable to concur in the foregoing opinion. Gladys Gartin, the wife of the deceased, filed her suit for divorce against the testator, Charles Newton Gartin, June 18, 1936, praying for divorce and alimony. A decree was entered in her favor which provided, among other things, for a divorce and that the plaintiff should receive a lump sum of $1500 in full settlement for alimony and support, and releasing any interest she might have in the personal property of the defendant, other than the amount awarded. Within 30 days after the entry of this decree the testator died. A prior will, which had left his personal property to his then wife, Gladys Gartin, was not destroyed, but was produced by her after his death. While it is true that a divorce does not nullify a will and it is not revoked by law, nevertheless the situation is different, in my opinion, when there has been a property settlement which was intended to fix the property status of the parties. This was accomplished by the decree which was not appealed from and was in favor of the plaintiff here. The doctrine of revocation of wills by implication is in effect in Illinois and has been for a

number of years. Moreover, the decree, in my opinion, worked a revocation of the will by implication. It was clearly the intention of the parties by the entry of the decree, which was not objected to, that this property settlement was to be in full of all claims against testator or his estate. *In re Gilmour's Estate,* 260 N. Y. Supp. 761; *Lansing* v. *Haynes,* 95 Mich. 16.

Mr. JUSTICE JONES, also dissenting.