*In re* MERCURE ESTATE

Opinion of the Court

1. Wills—Revocation—Presumptions—Intent—Divorce—Property Settlement.

The facts raise no presumption that the will should be revoked by operation of the divorce and the intent of the testator is clear where the will was executed after the parties had signed a property settlement agreement and the decedent made no reference in this will to plaintiff as his wife but devised his estate to Vera Evelyn Mercure (plaintiff's name at that time).

Separate Opinion

T. G. Kavanagh, Swainson, Williams, and Levin, JJ.

2. Evidence—Presumptions—Conclusive Presumption.

There cannot be such a thing as a "conclusive presumption"; wherever from one fact another is said to be conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule is really providing that, where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of the proponent's case; and to provide this is to make a rule of substantive law, and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of coming forward with evidence; the term has no place in the principles of evidence and should be discarded.

3. Wills—Revocation—Divorce—Property Settlement—Presumptions—Conclusive Presumption—Evidence.

Michigan Supreme Court did not mean to establish as a rule of law that a divorce coupled with a property settlement raises a

References for Points in Headnotes
[1, 3, 4, 9] 57 Am Jur, Wills §§ 535, 536.
[2, 8] 57 Am Jur, Wills §§ 91, 437.
   Presumption and burden of proof as to undue influence on testator, 154 ALR 600.
[5–7] 57 Am Jur, Wills § 521.

"conclusive presumption" that the testator intended to revoke his will executed prior thereto, but, it established a rule of law based on true presumption, which of course could be overcome by evidence.

4. WILLS—REVOCATION—DIVORCE—PROPERTY SETTLEMENT—PRESUMPTIONS—INTENT.

The law will and should imply a revocation where a divorce and property settlement, in the usual circumstance of estrangement, raises a strong presumption that there was an intention to revoke a prior will and there is nothing in the record to rebut it.  ˎ

5. WILLS—REVOCATION—RULING OF LAW.

The implication of revocation of a will from a given set of facts is a ruling of law and no amount of "testimony" could rebut a ruling of law.

6. WILLS—REVOCATION—INTENT—STATUTES.

Express revocation of a will is provided for in the manner set forth in a statute and it requires specified acts to be done with the intention to revoke (MCLA 702.9).

7. WILLS—REVOCATION—PRESUMPTIONS—INTENT—EVIDENCE.

Burning, tearing, cancelling, or obliterating a will by the testator gives rise to the "natural" presumption that the testator intended thereby to revoke the will, but the specified act alone will not operate to revoke if a court has sufficient evidence to rebut such presumption of intent.

8. WILLS—REVOCATION—PRESUMPTIONS—INTENT—EVIDENCE.

An implied revocation arises out of a change of condition or circumstances of the testator recognized by the common law as giving rise to the "natural" presumption that the testator would have revoked his will if he had thought about it; but, any change of condition or circumstances alone will not revoke a will in face of evidence to rebut such presumption of revocation even as such evidence would rebut the presumption of intention that arises when a will is burned, torn, canceled, or obliterated by the testator; whenever a presumption of revocation arises, whether by the acts prescribed for express revocation by the Legislature or by a change of condition or circumstances of the testator recognized by the common law as implying a revocation, any evidence tending to rebut such presumption must be considered in assaying the validity of the conclusion of revocation.

9. WILLS—REVOCATION—EVIDENCE—DIVORCE—PROPERTY SETTLEMENT
   —PRESUMPTIONS.

   Evidence was adequate to support the conclusion of a circuit
   judge that a will be admitted for probate where decedent was
   divorced, a property settlement was filed, 1 day after filing the
   property settlement stipulation and 2 months prior to the
   divorce, decedent executed a will devising all of his estate to his
   wife, with no reference to her as his wife and no reference to
   the pending divorce, 23 years later the decedent died after an
   extended illness with several periods of hospitalization inter-
   spaced by residency with and care by the former wife, and the
   circumstances surrounding the relationship of the former wife
   and decedent, coupled with the fact that the will was executed
   after the breakdown of marriage while the divorce was pend-
   ing, rebut any presumption of revocation by divorce.

Appeal from order of Court of Appeals, Division
2, Danhof, P. J., and Quinn and McGregor, JJ.,
reversing Schoolcraft, William F. Hood, J. Submit-
ted January 11, 1974. (No. 8 January Term 1974,
Docket No. 54,597.) Decided April 16, 1974.

Petition by Vera E. Stephens for the probate of
the will of Louis A. Mercure. Mrs. Bill Scoon, Mrs.
Floyd Anderson and Percy Olmsted objected to the
petition. Petition for probate denied. Plaintiff ap-
pealed to circuit court. Reversed. Defendant ap-
pealed to the Court of Appeals. Reversed. Plaintiff
appeals. Reversed.

*Gifford D. Smith,* for plaintiff.

*Herbert & Wood,* for defendants.

M. S. COLEMAN, J. I concur in the result, but am
of the opinion that the cases cited are not applica-
ble to the present set of facts. The cases discussed
involved wills written prior to the filing of divorce
proceedings and to the execution of property set-
tlement agreements.

In this case, the will was executed after the

parties had signed a property settlement agreement. Decedent made no reference in this will to plaintiff as his wife but devised his estate to Vera Evelyn Mercure (plaintiff's name at that time). The facts raise no presumption that the will should be revoked by operation of the divorce. The intent of the testator is clear.

T. M. KAVANAGH, C. J., and SWAINSON, WILLIAMS, LEVIN, and J. W. FITZGERALD, JJ., concurred with M. S. COLEMAN, J.

T. G. KAVANAGH, J. This case involves the revocation of a will.

The statute MCLA 702.9; MSA 27.3178(79) which provides for express and implied revocation has, from its original enactment in 1846, read:

"No will nor any part thereof shall be revoked, unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; or by some other writing, signed, attested and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator."

The question presented is whether there was an implied revocation.

The decedent and plaintiff were married in 1939 and divorced on April 13, 1948. They had no children. A property settlement whereby the decedent was to pay plaintiff $600 was filed on February 5, 1948 in the circuit court for Schoolcraft County, but was not incorporated into the decree

of divorce. However, decedent paid plaintiff a good deal, if not all, of the $600.

On February 6, 1948, one day after filing the property settlement stipulation and two months prior to the divorce, decedent executed a will devising all of his estate to the plaintiff, then Vera Evelyn Mercure, with no reference to her as his wife and no reference to the pending divorce. Plaintiff was not aware of the execution of the will, but a few days later decedent gave her the will for safekeeping.

Plaintiff married her present husband in 1949. Since 1959 they lived in a mobile home next door to decedent on a lot owned by him. Plaintiff, her husband, and decedent ate their meals together and often went fishing together. The decedent had his telephone transferred from his home to plaintiff's trailer and continued to pay the telephone bills. Also, decedent carried an identification card which requested that plaintiff be notified in the event of accident or serious injury.

In 1971 decedent died after an extended illness with several periods of hospitalization interspaced by residency with and care by plaintiff. The will was offered for probate and contested by the nephew and nieces of decedent. The probate court refused admission of the will ruling that a divorce revokes a previously executed will. The circuit court reversed, distinguishing the instant case from *Lansing v Haynes,* 95 Mich 16; 54 NW 699; 35 Am St Rep 545 (1893); *Wirth v Wirth,* 149 Mich 687; 113 NW 306 (1907); and *In re McGraw's Estate,* 233 Mich 440; 207 NW 10; 42 ALR 1283 (1926). It held that in the instant case the circumstances surrounding the relationship of plaintiff and decedent, coupled with the fact that the will was executed after the breakdown of marriage

while the divorce was pending, rebut any presumption of revocation by divorce.

The Court of Appeals reversed, pursuant to *In re Blanchard Estate,* 43 Mich App 752; 204 NW2d 730 (1972) wherein the Court ruled that a divorce coupled with a property settlement raises a "conclusive presumption" that the testator intended to revoke his will executed prior thereto.

That this has been the law in Michigan since the Court's decision in *Wirth v Wirth, supra,* cannot be doubted.

Whether we should continue to adhere to this holding is what we must consider in the discharge of our office as a common-law Court. Our duty would be different if this doctrine of revocation were established by statute. The doctrine has the advantage of eliminating uncertainty and minimizing litigation and for this reason cannot be said to be a wholly unreasonable law. Accordingly it would withstand attack as an arbitrary or capricious statute.

But this is a doctrine established by a decision of a common-law court and commends itself to our adherence primarily by virtue of its reason and its applicability to present conditions with a proper regard for the doctrine of stare decisis.

Its reason does not persuade us.

In the first place we agree with the statement in Wigmore's treatise 9 Wigmore, Evidence (3d ed), § 2492, p 292:

"In strictness, there cannot be such a thing as a 'conclusive presumption.' Wherever from one fact another is said to be conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule is really providing that, where the first fact is shown to exist, the second fact's existence is wholly

immaterial for the purpose of the proponent's case; and to provide this is to make a rule of substantive law, and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of coming forward with evidence. * * *

"The term has no place in the principles of Evidence (* * .*), and should be discarded."

In the second place our reading of the *Lansing* case persuades us that the *Lansing* Court not only did not mean to establish such a rule of law as a "conclusive presumption", but, indeed, by its treatment of that controversy established a rule of law based on a true presumption, which of course could be overcome by evidence.

The *Wirth* Court at page 688 upheld a trial court's refusal to admit evidence offered by the proponent to show:

"[T]he relationship of the parties all through their married life and up to the time of testator's death as bearing upon his intention to revoke, the will; that after the divorce the testator seemed to retain his affection and respect for proponent and to realize that he alone was to blame for the separation; that he visited her and wrote her letters; and his declaration both to her and to others in relation to the balance of the property, and a declaration that he desired to have the will in question remain in the probate office and take effect after his death."

The Court observed:

"This offer of testimony presents the question whether the change in the relations of the parties to the settlement of their property affairs raises a rebuttable presumption of revocation or whether such divorce and settlement operates ipso facto to revoke the will. We think the circuit judge correctly held that the divorce and settlement revoked the will * * *

"In the case of *Lansing v Haynes,* 95 Mich 16, we had

before us for consideration the question of whether the law implies a revocation of a will by the subsequent divorce of a husband and wife, the wife being a legatee, and the settlement of their property rights. It was held in that case, upon full consideration, that such subsequent divorce and settlement of property rights did in law imply a revocation of the will. These facts were not treated as facts raising a presumption of revocation open to be rebutted by testimony, for had such been the determination it would have been our duty to remand the case for a new trial, which was not done, but final judgment was entered in this court, the fact of the marriage and separation being treated as a revocation as matter of law. It was said:

" 'The question is not to be controlled by a possible presumption but by the reasonable presumption. The possibility, therefore, that the deceased might have desired that the remainder of his property should go to his divorced wife, cannot be considered in determining the question of an implied revocation in this case.'

"We think the case of *Lansing v Haynes* must be held decisive of the question here presented. * * * " pp 688–689.

Thus, because the *Lansing* Court ruled that there was a revocation implied by the facts of that case, the *Wirth* Court held that a revocation must be implied in any case wherein some of the facts are the same.

We think this conclusion is not consonant with the reasoning in *Lansing, supra,* let alone impelled by it. The *Lansing* Court considered *all* the proferred evidence.

The *Lansing* Court noted at page 17 that:

"As is usual in such cases, the feeling between them, at least upon her part, became bitter. She did not speak to him for three months before the decree nor afterwards. His place of business was three blocks from her home and she avoided passing by it."

Later, commenting on an Ohio case of *Charlton v Miller,* 27 Ohio St 298; 22 Am Rep 307 (1875) which it characterized as the only adjudicated case the Court had been able to investigate which involved the effect of divorce upon the precise point in issue, the *Lansing* Court said:

"It is also noteworthy that in that case much stress was laid upon the fact that the relations of the parties, at the time of the execution of the will and at the testator's death, were the same." p 20.

The Court also observed:

"By the decree of divorce in this *[Lansing]* case the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter." p 20.

The Court concluded its exposition by saying:

"The natural presumption arising from these changed relations is the reasonable one, and the one in law which implies a revocation. The question is not to be controlled by a possible presumption, but by the reasonable presumption. The possibility, therefore, that the deceased might have desired that the remainder of his property should go to his divorced wife, cannot be considered in determining the question of an implied revocation in this case. Such disposition of his property would be unusual, and contrary to common experience." p 21.

We are satisfied that the *Lansing* Court concluded that a divorce and property settlement, in the usual circumstance of estrangement, raised a strong presumption that there was an intention to revoke the prior will to which the law will give effect. There was nothing in that record to rebut it, and the mere possibility that the testator intended otherwise will not suffice. We agree under

those circumstances the law will and should imply a revocation.

The *Wirth* Court held that the *Lansing* Court had ruled that a "subsequent divorce and settlement of property rights did in law imply a revocation of the will." The Court in *Wirth* explained its holding by saying:

"These facts were not treated as facts ʼ raising a presumption of revocation open to be rebutted by testimony, for had such been the determination it would have been our duty to remand the case for a new trial, which was not done, but final judgment was entered in this court, the fact of the marriage and separation being treated as a revocation as matter of law." p 689.

Manifestly the Court was confused.

The *implication* of revocation from a given set of facts is a ruling of law. No amount of "testimony" could rebut a ruling of law and no purpose would have been served by remand for trial in *Lansing* for the facts were not in dispute. Using the fact that the *Lansing* Court did not remand for trial as a reason for concluding that a divorce and property settlement ipso facto revoked a prior executed will is faulty logic.

We are not persuaded it is good law.

Express revocation is provided for in the manner set forth in the statute *supra*. It requires specified acts to be done with the intention to revoke. Burning, tearing, canceling, or obliterating a will by the testator gives rise to the "natural" presumption that the testator intended thereby to revoke the will, but the specified act alone will not be held to revoke if a court has sufficient evidence to rebut such presumption of intent.

An implied revocation arises out of a change of condition or circumstances of the testator recog-

nized by the common law as giving rise to the "natural" presumption that the testator would have revoked his will if he had thought about it. But, any change of condition or circumstances alone will not be held to revoke a will in face of sufficient evidence to rebut the presumption of revocation, even as such evidence would rebut the presumption of intention that arises when a will is burned, torn, canceled, or obliterated by the testator.

Whenever a presumption of revocation arises, whether by the acts prescribed for express revocation by the Legislature or by a change of condition or circumstances of the testator recognized by the common law as implying a revocation, any evidence tending to rebut such presumption must be considered in assaying the validity of the conclusion of revocation.

This appears to have been the standard used by the circuit judge in making his judgment. The evidence is adequate to support his conclusion.

The Court of Appeals is reversed, the judgment of the circuit court is reinstated.

Costs to plaintiff.

SWAINSON, WILLIAMS, and LEVIN, JJ., concurred with T. G. KAVANAGH, J.