In re MILLER.

MILLER v. AKIN.

(Supreme Court, Appellate Division, First Department. February 11, 1916.)

1. WILLS ⬤⟿684—TRUSTS—CONSTRUCTION—"WIFE."

Under a will authorizing trustees to pay the income of a trust fund to a person, naming him, or to his wife, naming her, without imposing a condition that she remain his wife, a divorce secured by him does not affect her right to such of the income as the trustees may allow her, as such right does not depend upon her status as his wife, the words "his wife," used in the will, being words of description only.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1614–1628; Dec. Dig. ⬤⟿684.

For other definitions, see Words and Phrases, First and Second Series, Wife.]

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. WILLS ⊂⇒684—TRUSTS—DISCRETIONARY POWERS—JUDICIAL INTERFERENCE.
   Where the trustees named in a will, under an exercise of discretion
   therein granted, allow the whole of the income to one of two beneficiaries
   named, their action will not be disturbed.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1614–1628; Dec.
   Dig. ⊂⇒684.]

Appeal from Surrogate's Court, New York County.

Petition by Oscar C. Miller for decree of the Surrogate's Court to
compel the trustees named in the will of Sarah Akin to pay him the
whole of the income of the trust fund therein created. From a decree
denying the petition (89 Misc. Rep. 690, 152 N. Y. Supp. 310), he ap-
peals. Affirmed.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH,
and PAGE, JJ.

Samuel Dickstein, of New York City, for appellant.
Paul E. Whitten, of New York City, for respondent trustees.
Mark M. Schlesinger, of New York City, for respondent Miller.

DOWLING, J. Sarah Akin made her last will and testament on
April 13, 1908, and thereby, among other legacies, by the ninth clause
thereof gave and bequeathed to her trustees the sum of $25,000, in
trust to invest the same, "to collect the rents, income and profits there-
of, and to pay the net income arising therefrom to my nephew Oscar
Clark Miller during the term of his life," with directions as to the
disposition of the principal after his death. Oscar Clark Miller was
then married to Julia Miller. The answer of the trustees to the pe-
tition herein sets up that Miller abandoned his wife and minor son
in the month of October, 1908, at Atlantic City, in the state of New
Jersey, and for that reason decedent executed a codicil to her will on
May 12, 1909; the sole change made in the original will being as to
the ninth clause thereof, containing the bequest of the life estate to
Miller. As to this the codicil provided:

"Second. I revoke the ninth clause of my said will, and in place thereof I
provide as follows: I give and bequeath to my trustees the sum of twenty-
five thousand ($25,000), to have and to hold the same for the following uses
and purposes: To invest the same in such securities as are directed in my
said will in respect to such sums as are given in said will to my trustees in
trust; to collect the rents, income and profits thereof, and in their discretion,
and from time to time, to pay the whole of the net income arising therefrom
either to my nephew, Oscar Clark Miller, or to his wife, Julia Miller, or a
portion of such net income to one, and the remaining portion to the other,
during the term of the life of the said Oscar Clark Miller."

Then followed the provision as to the disposition to be made of the
principal of said trust fund upon the death of Miller, in the happening
of certain contingencies. Sarah Akin died on April 29, 1910, and
her will and codicil were duly admitted to probate, and letters tes-
tamentary issued to the executors and trustees named therein, who
duly qualified and have continued to act as such. Pursuant to the
authority given them by the will and codicil, and exercising their dis-
cretion as thereby allowed, the executors and trustees divided the in-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

come from said trust fund, amounting to approximately $1,200 in the proportion of $400 to Miller and the balance to his wife up to and including July 1, 1913. Miller has not contributed to the support of his wife or minor son since October, 1908. On November 3, 1913, Miller began an action for an absolute divorce against his wife in the Second judicial district court of the state of Nevada, in and for Washoe county, based on allegations of jealousy and cruelty on the part of his wife. His complaint in that action showed that they were married in the state of New York on June 15, 1893, that his son was then 19 years of age, and that he himself had been a resident of the state of Nevada for upwards of six years. Upon Miller's affidavit that his wife resided at Atlantic City, in the state of New Jersey, an order was made for the publication of the summons in the Reno Evening Gazette and for the mailing of a certified copy of the complaint to his wife at an address given in Atlantic City, N. J. The petitioner presented proof of personal service of a certified copy of the complaint, attached to a copy of the summons, upon his wife at Atlantic City, N. J., but offered no proof of publication or mailing, and has produced no Nevada statute authorizing a departure from the terms of the order of publication. Mrs. Miller never appeared or answered in the Nevada action, and on December 23, 1913, the Nevada court gave judgment in favor of Miller dissolving the marriage between him and his wife and freeing each of the parties "from the bonds of matrimony and all of the obligations thereof." Then on December 27, 1913, his New York attorney notified the executors and trustees of the Akin estate of the granting of the Nevada decree, by reason whereof—

"the said Julia A. Miller is no longer the lawful wife of said Oscar Clark Miller. You are therefore hereby required and notified to pay no further sums of money or instalments to said Julia A. Miller, for or by reason or on account of any legacy or bequest given by or under the provisions of said above mentioned will to said Oscar Clark Miller, or to said Julia A. Miller, as his wife named therein, or to any other person or persons whatever acting on behalf of said Julia A. Miller."

The reply of the executors and trustees was:

"That in the exercise of the discretion thereby [i. e., by the will] granted them they will on the 7th day of January, 1914, pay the entire net income of said trust fund accrued to January 1, 1914, to Julia Miller, and that no part of the same will be paid to Oscar Clark Miller."

The answer of the executors and trustees sets forth:

"They allege that their determination to pay no part of said net income to Oscar Clark Miller, but to pay the whole of the same to said Julia Miller is within the limits of the discretion conferred upon them by the terms of said will, and that said Oscar Clark Miller has no legal or equitable right to the payment to him of any part of said net income."

They also set up the invalidity of the Nevada decree. Petitioner has brought this proceeding to obtain a decree for the payment and delivery to him by the executors and trustees of the whole of the net income from the trust fund in question. His claim is that, as the Nevada judgment dissolved the marriage between himself and his wife, the latter thereby ceased to be entitled as his wife to any portion of the trust income. The learned surrogate has denied the petition, upon

the ground that the Nevada decree was invalid, no jurisdiction ever having been acquired in that state of Julia Miller, and that the courts of this state would not recognize the decree.

[1] We do not consider it necessary to discuss the validity of the Nevada decree, for we do not believe that the right of Julia Miller to receive such share of the income from the trust fund as the executors and trustees might allot to her in any way depends upon her status as Miller's wife. The words "his wife," used in the codicil preceding the words "Julia Miller," were words of description only, and there was no condition, express or implied, that she should remain his wife in order to be entitled to take such sum as the executors and trustees might decide to pay to her. Schult v. Moll, 132 N. Y. 122, 30 N. E. 377; Wait v. Wait, 4 N. Y. 107; Salvin v. Salvin, 165 App. Div. 363, 151 N. Y. Supp. 60; Durian v. Central Verein, 7 Daly, 168; Overhiser v. Overhiser, 63 Ohio St. 77, 57 N. E. 965, 50 L. R. A. 552, 81 Am. St. Rep. 612; Bachmann v. Supreme Lodge, 44 Ill. App. 188.

[2] By the terms of the codicil, the executors and trustees were explicitly empowered, in their discretion, to pay the whole of the net income to Julia Miller, and, having determined to exercise that discretion in her favor, their decision cannot be disturbed.

The decree appealed from will therefore be affirmed, with costs. Order filed. All concur.