In the Matter of the Estate of GEORGE WIRT SIMPSON, Deceased.

Surrogate's Court, Kings County, June 12, 1935.

*Winthrop, Stimson, Putnam & Roberts,* for the petitioner.

*Junius Pendleton Wilson,* special guardian for Louise Lee Simpson.

*Larkin, Rathbone & Perry,* for Henry A. Howe, deceased.

*Walter W. Swabenland,* for Louise Ryan Simpson.

WINGATE, S. The decedent and Louise Ryan Simpson were married on October 2, 1912. Two children were born of the mar-

riage, a son now of age and a daughter born on October 27, 1920, for whom a special guardian has been appointed herein. In September, 1925, decedent and Louise Ryan Simpson separated, never to live together again; decedent thereafter provided for the support and maintenance of his wife and children. On January 3, 1929, more than three years after he had separated from his wife, decedent executed his last will and testament heretofore admitted to probate by this court. Paragraphs third and fourth thereof, so far as here pertinent, read as follows:

" *Third.* I give and bequeath to my wife, Louise Ryan Simpson, absolutely all my household effects including furniture and furnishings, silver and plated ware, china, glassware and bric-a-brac, pictures, books, supplies and all articles of household adornment or utility and in addition thereto the sum of One Thousand Dollars.

" *Fourth.* All the rest, residue, and remainder of the property, real and personal, of whatsoever kind or description and wheresoever situated, of which I may be in any way entitled at the time of my death or over which I may then have any power of disposition or appointment, including the proceeds of all policies of life insurance which may be or become payable to my estate upon my death, all of which is hereinafter referred to as my residuary estate, I give, devise, bequeath and appoint to my trustees, in trust nevertheless:

" To invest and reinvest the same, to receive and collect the rents, income and profits therefrom and, after paying or deducting all necessary and proper expenses and charges, to transfer and pay over the net income from the date of my death to my wife, Louise Ryan Simpson, until her death or if she should remarry then only until her remarriage, and upon the death or remarriage of my said wife as the case may be or if she should have predeceased me then upon my death to divide the principal " for the benefit of decedent's surviving children.

Decedent and Louise Ryan Simpson were divorced on January 5, 1934, by a decree of the Circuit Court of Anne Arundel county, Md., by which decree Louise Ryan Simpson was awarded alimony. No voluntary property settlement was entered into between the parties. Decedent died on February 3, 1934. Louise Ryan Simpson has not remarried.

The special guardian contends that under the facts above chronicled, Louise Ryan Simpson is not entitled as beneficiary under either paragraphs third or fourth of this will, to any rights which would otherwise have been hers, having been lost upon the procurement of her divorce from decedent. Two theories are advanced in substantiation of this conclusion: *First*, that the divorce effected a revocation by implication of so much of the testamentary provisions

as related to her; and *second*, that the provisions of paragraphs third and fourth in favor of Louise Ryan Simpson were conditioned upon her being the wife of the decedent at the time of his death.

Authority is consistently to the effect that the common-law doctrine of implied revocation does not obtain in this State. " The courts cannot, consistently with the statute, hold that any other mere change of circumstances will amount to an implied revocation." (*Langdon* v. *Astor's Executors*, 16 N. Y. 2, at p. 42.) " Taken literally, the statute has swept away all implied revocations, except what are embraced within its provisions." (*Arthur* v. *Arthur*, 10 Barb. 2, at p. 21.) " Implied revocations are now regulated by statute." (*Matter of Parker*, 100 Misc. 219, at p. 227.) In *Titus* v. *Bassi* (182 App. Div. 387) the Appellate Division, Second Department, expressly based its decision upon statutory authority. " This is not an ' implied revocation,' as claimed by respondent; it is an express revocation as provided in section 40 of the Decedent Estate Law " (p. 397). *Matter of Gilmour* (146 Misc. 113) is not inconsistent. The language of section 34 of the Decedent Estate Law is itself strong implication that any revocation other than that prescribed by statute is prohibited in this State.

Even where the common-law doctrine of implied revocation is recognized, more is required for its successful invocation than is presented in this case. In such jurisdictions it is uniformly held that divorce *per se* is insufficient to effect a revocation of a will in whole or in part; the divorce must be accompanied by a property settlement between the parties. (*Card* v. *Alexander*, 48 Conn. 492; *Estate of Brown*, 139 Iowa, 219; 117 N. W. 260; *Lansing* v. *Haynes*, 95 Mich. 16; 54 N. W. 699; *Wirth* v. *Wirth*, 149 Mich. 687; 113 N. W. 306; *Matter of McGraw*, 228 Mich. 1; 199 N. W. 686; *Donaldson* v. *Hall*, 106 Minn. 502; 119 N. W. 219; *Matter of Bartlett*, 108 Neb. 681; 189 N. W. 390; *Estate of Martin*, 109 Neb. 289; 190 N. W. 872; *Charlton* v. *Miller Admr.*, 27 Ohio St. 298; *Pardee* v. *Grubiss*, 34 Ohio App. 474; *Matter of Jones*, 211 Penn. St. 364; 60 A. 915; *Battis* v. *Montaba*, 143 Wis. 234; 126 N. W. 9.) No decision has been cited by counsel nor discovered by the court which holds that a simple award of alimony in a divorce proceeding is a settlement within the rule of implied revocation, nor, in view of the theory of the adjudicated cases, would such a conclusion seem logical or correct.

The second argument of the special guardian is that the " testator meant that Louise Ryan Simpson should continue to be his wife while he lived and his unmarried widow at his death as a condition precedent to her taking any portion of his estate." No precise authority upon this point is found in this jurisdiction. In *Matter*

*of Miller* (171 App. Div. 229; affd., 219 N. Y. 572) the direction was to pay the income of a trust fund " either to my nephew, Oscar Clark Miller, or to his wife, Julia Miller." Subsequent to the death of the testatrix, Oscar Clark Miller secured a divorce from Julia Miller. The court held that Julia Miller's right to receive a share of the income of the trust was not dependent upon her status as Miller's wife. " The words ' his wife ' used in the codicil preceding the words ' Julia Miller ' were words of description only, and there was no condition, express or implied, that she should remain his wife in order to be entitled to take such sum as the executors and trustees might decide to pay to her."

It may be argued that the reasoning of this case is without applicability where similar phraseology is adopted with reference to one who at the time of the execution of the will was the wife not of a third person but of the testator himself. This argument is answered in *Matter of Jones* (*supra*, at p. 381). " The decree in divorce took away only what the law gave to her when the marriage was contracted. This was the right to support, and to dower in his estate if she survived him. After the entry of the decree, the testator was no longer bound to provide for her, and she had no further claim upon his estate. What the law gave, it took away; nothing more."

" The beneficiary is not here claiming anything which accrued to her in pursuance of her marriage. She is here only as a legatee, and is asking for that only which the testator gave to her of his free grace, and as a matter of bounty. * * * As a legatee she stands upon the same footing as any other individual, and her relation to the testator has nothing to do with the case, unless he chose to make it an element, in the bestowal of the gift. * * * It will be noticed that the gift was to ' My wife, Mary Brown Jones,' without any conditions or limitations. The testator gives one third of his estate to a particular person, naming her, and further identifying her by the statement that she is his wife; that is in substance what he says. He makes no stipulation that she shall remain his wife, or be such at the time of his death. We are clear that such use of the word ' wife ' as is here made, is descriptive only, and does not imply any continuing condition."

The logic of this excerpt controls here. The testamentary dispositions under consideration were intended for Louise Ryan Simpson, who at the time of the execution of the will was the testator's wife and consequently was described as such. The dispositions, however, were unrestricted, and the words " my wife " and " said wife " as employed by the testator were merely descriptive. They import no condition that Louise Ryan Simpson shall remain testator's wife until his death in order to be entitled to take under the

will. (See *Murphy* v. *Markis*, 98 N. J. Eq. 153; 130 A. 840; *Matter of Boddington*, L. R. 22 Ch. Div. 597; 25 id. 685.) In *Salvin* v. *Salvin* (165 App. Div. 362), a case involving the description of a beneficiary under a policy of insurance, a similar result was reached.

With respect to the remaining question presented, the court decides that the powers, authority and discretion conferred upon the executor and upon the trustees by virtue of the provisions of paragraphs fifth, sixth and seventh of the will passed to and are exercisable by their respective successors, the administrator with the will annexed and the substituted trustee. (Surr. Ct. Act, § 225; *Matter of White*, 135 Misc. 377, and cases cited; *Matter of Jenkins*, 111 id. 517.) (See, also, *Matter of Trowbridge*, 117 Misc. 55; *Matter of Gargiulo*, 134 id. 182; *Matter of Kronson*, 140 id. 102; *Matter of Storts*, 142 id. 54; *Matter of Gude*, 156 id. 154.)

Proceed accordingly.