In the Matter of the Estate of HENRIETTA F. LAMERDIN, Deceased.

Surrogate's Court, Queens County, December 5, 1935.

*Renander, Miller, Bernard & Pigott,* for the proponents.

*Vincent Tese,* for the contestant.

HETHERINGTON, S.   Decedent died on August 19, 1935, survived by her husband, two sisters, and three brothers, as her sole distributees.   An instrument stated to have been executed by her on May 24, 1922, has been offered for probate by one of her brothers and sisters, the executors named therein.   After directing payment of her debts and funeral expenses, decedent made provision for two pecuniary legacies aggregating $1,100.   A specific legacy of a sable neck piece of the estimated value of fifty dollars was given to one whose relationship is not disclosed.   This was followed by a devise of three lots to her husband, coupled with a bequest to

him of certain articles of jewelry which he had presented to her. An additional provision was made for him to the extent of making him the life beneficiary of certain household furniture and equipment, which, upon his death, fell into and became a part of the residuary estate. The monetary value of his entire interest is estimated at $800. Specific articles of jewelry and wearing apparel were given to her sisters. The residue of the estate was divided equally between the sisters and brothers. The estimated value of the provisions made for each of them is approximately $10,000. Probate of the propounded instrument is satisfactory to all, except the husband.

In the answer filed by him he asks that probate be denied upon various grounds, the first four of which need not be considered, as no attack is made upon their sufficiency. Proponents, however, challenge the sufficiency of the remaining objections. In the objections under attack, the objector alleges that he was married to the decedent on January 26, 1918, and remained in happy accord with her until her death. That decedent and he, having in mind a common and fatal accident which befell her brother and his family, and a European trip planned to be taken by them in the summer of 1922, agreed, at a time shortly prior to May 25, 1922, to execute mutual wills, effective only until their safe return, and under the provisions of which their respective estates, in the event of their simultaneous deaths while in transit, " would go to their respective heirs and beneficiaries as if one did not outlive or survive the other." That while he made and, upon his return from Europe, revoked his will in accordance with the agreement by destroying the same, his wife, although intending to make a will in accordance therewith, executed the propounded paper " at and under the directions of her brother Edwin V. Hellawell and left the same with him," and in direct violation thereof. Objector further asserts that he informed his wife of the destruction of his will, and although she requested the return of her will to do likewise, the same was not returned. Allegations follow to the effect that decedent was assured by her brother on different occasions that her will had been revoked by destruction. That decedent believing and relying upon the assurance so given, and fortified with a knowledge of the extent and effect of the amendments made to the Decedent Estate Law relative to the rights of the surviving spouse gained through conferences with the objector, a lawyer, and others, ' stated to various persons upon numerous occasions that she had no will and did not intend to make one as the law of succession was satisfactory to her." Objector concludes his pleading by stating that to permit probate of the propounded instrument would be in violation of the agreement made between the decedent and himself,

would perpetrate a fraud, and be contrary to equity and justice, and by urging that having fully performed his part of the agreement, he is entitled in law and equity to have the same performed on the part of the decedent.

An inquiry into the validity of the objections just detailed is provoked by proponents' motion to strike the same out as insufficient. Such a motion is equivalent to a demurrer, and in arriving at a determination thereof the facts alleged and the inferences reasonably deducible therefrom are to be accepted as true. Viewed in this light, the objections set forth an agreement between the decedent and the objector to make mutual wills disposing of their estates upon a designated contingency in a particular manner, which, upon their safe return, were to be revoked and made null and void. A reasonable construction of the agreement justifies the conclusion that the parties were to effectuate a revocation by an act to be performed in the future, namely, upon their safe return from abroad. The acts done by the objector subsequent to his return reflect a similar interpretation.

The right of the objector to interpose the agreement pleaded as a valid objection to probate has frequently and recently been denied. (*Matter of Higgins*, 148 Misc. 30; affd., 264 N. Y. 226.) The surrogate has no power, in this proceeding, to give any effect whatever to the contract. Unless the objector can sustain the objections not now under attack, the mandatory language of section 144 of the Surrogate's Court Act requires that the instrument be admitted to probate. This is so despite the enlarged equitable jurisdiction of the court. Although it was formerly held that the right to establish and enforce an agreement of the character here alleged could only be determined by the Supreme Court in an action in equity (*Matter of Hermann*, 178 App. Div. 182; affd., 222 N. Y. 564), the modern view takes notice of the increased equitable jurisdiction of the court and holds that it is no longer incumbent upon the surrogate to refer the parties to equity for the protection and enforcement of their rights. (*Matter of Higgins*, supra; *Matter of Lally*, 210 App. Div. 757; *Matter of Rosenblath*, 143 Misc. 640; 146 id. 424; affd., 240 App. Div. 846; *Matter of Razoux*, 154 Misc. 128.) Objector's rights under the contract may be established and enforced either in an independent proceeding or upon an accounting.

There remains, however, another question, and that is, whether the instrument offered for probate was duly revoked by the decedent in her lifetime. The objector so alleges in the first paragraph of his answer. Although no facts are stated therein disclosing the manner of revocation, the pleader, on a motion of the character

now under consideration, is entitled to have his pleading considered in its entirety. A careful scrutiny of the answer discloses that the only facts bearing upon revocation are those stated in the objections specifically complained of. The conclusion to be drawn therefrom is that the decedent requested her brother to destroy her will and, although falsely informed, believed that he had done so. The facts alleged are substantially similar to those disclosed in *Matter of Evans* (113 App. Div. 373), where the court held no revocation was accomplished. Equitable considerations cannot be invoked as a substitute for the failure to perform the acts plainly required by the statute to effect a revocation. To revoke or cancel a written will, compliance must be had with the statute. The pertinent statute, section 34 of the Decedent Estate Law, provides as follows: " No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses."

No facts are alleged which tend to show that the propounded instrument was revoked by some other writing of the testatrix, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed, or that it was destroyed by the decedent or by any other person in her behalf and in her presence. The instrument after execution was given to decedent's brother and apparently remained at all times in his custody. While the intent to revoke by destruction may have existed, it is necessary that the intent be consummated by some of the acts specified in the statute, or by the execution of a written instrument " declaring such revocation." The statutory requirements cannot be dispensed with. (*Matter of McGill*, 229 N. Y. 405, 411; *Matter of Parsons*, 119 Misc. 26; affd., 204 App. Div. 879; affd., 236 N. Y. 580.) The objections in so far as they seek to defeat probate based upon the alleged contract and revocation are insufficient and must be stricken out. Proponents may, therefore, take an order on notice striking out all of the allegations contained in those paragraphs of the answer designated V, VI and VIII. Paragraph VIII is meaningless. If the objector intends to serve and file amended objections, he can only do so in the usual manner.