In the Matter of the Accounting of FLORES H. SUSSDORFF, as Executrix of LOUIS SUSSDORFF, JR., Deceased, Petitioner.

Surrogate's Court, Queens County, July 27, 1943.

■■■■■■■■■■

*Davis Polk Wardwell Sunderland & Kiendl* for petitioner.

*Maurice Giaimo,* special guardian for Laura H. Sussdorff, an infant.

*Warren J. Heeg* for Mary E. Sussdorff, an infant.

SAVARESE, S. Louis Sussdorff, Jr., and Flores Howard Sussdorff were husband and wife at the time of the execution of the former's will on June 11, 1929. They had one child, a daughter, Mary Elizabeth. Subsequent to the making of the will, and at a time not disclosed, the wife procured a decree of divorce from him in the State of Nevada. The testator died on August 29, 1940, survived by his daughter, Mary Elizabeth, and another daughter, Laura, born subsequent to the execution of the will, as his sole distributees. The will was admitted to probate on December 26, 1940. Letters testamentary were granted on the following day to Flores Howard Sussdorff, who now seeks to judicially settle her account as executrix. In view of the divorce, the special guardian for the daughter, Mary Elizabeth, questions her mother's right to take under the decedent's will in which, by the second paragraph, he disposed of his entire estate as follows: " Two-thirds (⅔) of my said residuary estate to my wife, Flores Howard Sussdorff; and one-third (⅓) of my said residuary to my daughter, Mary Elizabeth Sussdorff ". In the next paragraph he names as his executrix " my wife, Flores Howard Sussdorff, and I direct that she shall serve without bond ".

The divorce obtained by the legatee does not, expressly or impliedly, revoke, alter or destroy the testamentary provision made for her in testator's will. A revocation or alteration to be effective must be made pursuant to the statute. (*Lovell* v. *Quitman,* 88 N. Y. 377; *Burnham* v. *Comfort,* 108 N. Y. 535; *Matter of Evans,* 113 App. Div. 373; *Matter of McGill,* 229 N. Y. 405; *Matter of Tremain,* 282 N. Y. 485; *Matter of Lamerdin,* 157 Misc. 431, affd. 247 App. Div. 887.) Section 34 of the Decedent Estate Law relates to the revocation and cancellation of written wills and provides as follows: " No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will

in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses." It is thus apparent that no will in writing nor " any part thereof " can be revoked or altered except by some other will in writing or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed. The statute neither mentions divorce nor provides that it shall have any effect on the will of a spouse previously executed. In view of the fact that the statutory methods of revocation are exclusive the common-law doctrine of implied revocation of wills by reason of subsequent changes in the condition or circumstances of a testator does not prevail in this State. (*Matter of Simpson,* 155 Misc. 866, 868; *Matter of Mortensen,* 157 Misc. 717, 722; *Matter of Crounse,* 168 Misc. 359, 361.) In *Matter of Simpson (supra)* Surrogate WINGATE decided that a subsequent divorce did not effect a revocation of the testamentary provisions in favor of the wife. A separation agreement does not operate as a revocation of a testamentary provision made for the husband unless by its terms it expressly declares an actual and absolute revocation. (*Matter of Crounse, supra.*) If *Matter of Gilmour* (146 Misc. 113) be regarded as holding to the contrary, I am not inclined to follow it. That a divorce does not effect a revocation of a testamentary provision in favor of either spouse is recognized in other jurisdictions. (*In re Cabaniss' Estate,* 191 Okla. 340; *Robertson* v. *Jones,* 345 Mo. 828; *Jones's Estate,* 211 Penn. St. 364; *Murphy* v. *Markis,* 98 N. J. Eq. 153, affd. on opinion below 99 N. J. Eq. 888; *In re Estate of Brown,* 139 Iowa 219; *Card* v. *Alexander,* 48 Conn. 492; *Gartin* v. *Gartin,* 371 Ill. 418.) There is no statute which bars a divorced spouse from taking under the will of a former spouse. I, therefore, hold that the bequest made by the decedent to his wife in the second paragraph of his will is neither revoked nor altered in any way or defeated by the subsequent divorce.

It is further urged that the gift is lost because the legatee did not remain the wife of the decedent nor was such at the time

of his death. The gift here is not simply as wife but also by name. In *Matter of Simpson* (155 Misc. 866, *supra*) the gift was to " my wife, Louise Ryan Simpson " and it was there held that the words " my wife " were merely descriptive and import no continuing condition that she should remain the testator's wife at the time of his death in order to take under his will. In *Murphy* v. *Markis* (98 N. J. Eq. 153, *supra*), testatrix devised unto her " beloved husband, William Henry Markis " all the remainder of her estate and appointed him her sole executor. Testatrix made her will on April 13, 1909, obtained a divorce from her husband on November 8, 1916, and died on September 14, 1923. It was held that the divorce did not effect a revocation of the devise, that the words " beloved husband " were descriptive and implied no condition that the legatee had to continue in the status of husband. In *Jones's Estate* (211 Penn St. 364, 381, *supra*), where there was a divorce and a gift to " My wife, Mary Brown Jones ", the court said: " The beneficiary is not here claiming anything which accrued to her in pursuance of her marriage. She is here only as a legatee, and is asking for that only which the testator gave to her of his free grace, and as a matter of bounty. * * * As a legatee she stands upon the same footing as any other individual, and her relation to the testator has nothing to do with the case, unless he chose to make it an element, in the bestowal of the gift. * * * It will be noticed that the gift was to ' My wife, Mary Brown Jones ', without any conditions or limitations. The testator gives one third of his estate to a particular person, naming her, and further identifying her by the statement that she is his wife; that is in substance what he says. He makes no stipulation that she shall remain his wife; or be such at the time of his death. We are clear that such use of the word ' wife ' as is here made, is descriptive only, and does not imply any continuing condition ". Where the gift is to a specifically named " wife " or " widow " of a designated individual, the gift is a personal one to the named beneficiary and the terms " wife " or " widow " are deemed to be merely descriptive. In other words, the terms of description may not be distorted into a condition limiting the gift. (*Matter of Tuck*, 165 Misc. 346, 348; *Matter of Miller*, 171 App. Div. 229, affd. 219 N. Y. 572.) The gift here will be regarded as a personal and unconditional one to Flores Howard Sussdorff and not affected by the fact that she was not the wife of the decedent at the time of his death. In view of the fact that decedent was survived by only two children and no widow, the intestate share

of his after-born child is one half of his estate. Inasmuch as the terms of the will can only operate on the remaining one half, the gift to Flores Howard Sussdorff of two thirds of testator's residuary estate must be reduced to two thirds of one half thereof, or one third, and the gift to testator's daughter, Mary Elizabeth, must similarly be reduced to one third of one half of the residue, or one sixth thereof. Inasmuch as a partial distribution appears to have been made on the erroneous assumption that the share of the after-born child was one third, a supplemental account should be filed within thirty days correcting and adjusting the shares of the interested parties as here and now determined. Distribution in kind to the interested parties of the furniture and silverware will be approved if the supplemental account discloses a holding by them in accordance with the foregoing determination of their interests. Account settled in accordance with the foregoing. Proceed accordingly.