John D. Bennett, S.
This is a proceeding for advice and direction in the sale of corporate stock. An offer to purchase 17 shares of such stock has been made by the decedent’s son by a previous marriage. The application is opposed by the decedent’s widow, Mary M. Boyd. The basis of such opposition is the widow’s contention that, under a joint will executed by the decedent and herself, she is the beneficial owner of 51 shares of stock of the corporation, and that if the stock must be sold for debts it should be sold as a block of 51 shares, which constitutes a majority share in the corporation, and should bring a higher price than a sale of a minority interest of 17 shares.
The decedent during his life was the sole owner of the 100 issued shares of stock of John Boyd Plumbing & Heating Co. Inc. Apparently as the result of repeated applications by his former wife for modifications of a decree awarding alimony, on February 18, 1954, the decedent entered into an agreement with his son whereby the latter was to receive two shares of stock in the corporation and, eventually, by inter vivos gift or testamentary bequest, receive 49% of the outstanding stock of the corporation. Upon the decedent’s death the balance of the stock or 51% was directed to be sold either to the corporation or the son at its book value. Mary M. Boyd, the surviving spouse, apparently was in accord with this arrangement, intended to relieve her husband from further harassment from his previous wife. Shortly after the execution of the above agreement, op *386 March 1, 1954, both decedent and his wife executed a joint will containing reciprocal provisions, in which each gave to the other all their respective estate, except that the decedent provided for a gift of so much of the corporate stock of the plumbing business as would give his son a 49% interest in such business.
In pursuance of the agreement of February 18, 1954, the decedent, during his life, gave his son a total of 49% of the issued stock of the corporation.
On December 16, 1958, in the will which has been admitted to probate, the decedent specifieially bequeathed 34 of the 51 shares owned by him at the time of his death to his son, and the balance to his wife by means of a residuary bequest to her. It is these 17 shares, part of the residuary estate, that the son now offers to purchase for $7,500.
The widow maintains that the joint and reciprocal will of 1954 created an enforcible contract, whereby the decedent agreed to bequeath his estate in a stipulated manner. Accordingly she says she is the beneficial owner of 51 shares of the corporation, and not merely 17 shares.
Although the issue of the enforcement of a contract to make a will in a proceeding of this type appears novel, it has been held that this court has sufficient jurisdiction to adjudicate such a question in an accounting proceeding or in a special proceeding (Matter of Lamerdin, 157 Misc. 431, affd. 247 App. Div. 887). It also would appear that such determination is necessary and incidental to a disposition of the primary proceeding of which this court does have jurisdiction (Matter of Venblow, 2 A D 2d 365).
To some extent the facts here parallel those present in Hermann v. Ludwig (186 App. Div. 287, affd. 229 N. Y. 544). There, as here, the parties executed joint and reciprocal wills each leaving all their estate to the survivor. The language used in both “ imports the joint disposition of the collective property of both, not the independent disposition by each of his own” (Rastetter v. Hoenninger, 214 N. Y. 66, 72). It is the continued and repeated use of the words “ We ” not “ I ” and “ our ” not “ my ” that prevails throughout the will. Similarly, the decedent, during his life, as did the deceased wife in the Hermann case, executed a new will revoking the prior joint will. There appears no evidence in this case, contrary to that in the Hermann case, that the widow even knew of her husband’s new will or acquiesced in its provisions. “ ‘ It [the will] might have been revoked by both jointly; it might have been revoked separately, provided the party intending it, had *387 given notice to the other of such revocation. But I cannot be of opinion, that either of them, could, during their joint lives, do it secretly ’ ”. (Hermann v. Ludwig, supra, p. 305.)
It is not essential to the widow’s position that she prove a written contract. ‘ ‘ A joint will itself may be such an agreement and, if so, requires no further writing to entitle the provisions of such a document to effectively dispose of the estates of the parties thereto ” (Elwyn v. Coneau, 8 Misc 2d 704, 711, affd. 5 A D 2d 748). Further, in distinguishing between mutual wills, separately executed identical documents, and joint wills, the court in Hermann v. Ludwig (supra, p. 300) said: “ In such cases it may well be that the wills were executed without either party knowing that the other had executed his will, and there is no necessary inference that the wills were the result of any mutual or reciprocal agreement. 1 But, where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property. This inference is especially strong where the parties are husband and wife, and where they have a common interest in the welfare of the devisees. ’ ”
On all the evidence adduced, this court is of the opinion, under the authority above quoted, that the widow has established that she and the decedent made an agreement for the joint disposition of their estates which the decedent was without power to revoke secretly and separately during his lifetime. She must therefore be deemed the beneficial owner of 51 shares of the corporation stock, and if such shares must be sold to pay debts, the executors must determine what price they can get for such 51 shares as a controlling interest.
Another separate contention raised by the respondent is that the proceeding should be dismissed because the executors are bound by the February 18 agreement in the sale of the stock. It is true that such executors are bound to sell in accordance with the terms of said agreement, if an offer is made to purchase by the corporation or the decedent’s son on the terms provided by such agreement. If, however, no such offer is made by the corporation or the decedent’s son, the executors have the power and duty to sell such stock on the best terms possible, and to receive offers for the purchase of said stock from all persons, including the son of the decedent.
At this time the court declines to approve the application for the sale of 17 shares of stock to the offerer. The advisa *388 bility of the sale of the total 51 shares cannot be determined on the evidence before this court, as there is no proof of the value of such block of stock or of any offers made for such stock. The proceeding is dismissed.