161 So.2d 678 (1964)
In re Estate of George F. Bauer, Deceased.
Susie D. BAUER, Appellant,
v.
Mary Douglas REESE, as Executrix of the Estate of George F. Bauer, deceased, et al., Appellees.
No. E-172.
District Court of Appeal of Florida. First District.
March 3, 1964.
Rehearing Denied March 30, 1964.
*679 Shell, Fleming & Davis, Pensacola, for appellant.
James E. Hertz of Fisher & Hepner, Pensacola, for appellees.
STURGIS, Chief Judge.
George F. Bauer died testate on July 10, 1962, leaving a will executed September 13, 1956, devising his homestead to his widow, appellant Susie D. Bauer, and the remainder of his considerable estate equally to his paternal and maternal relatives. Bauer had no children and his parents predeceased him. Letters testamentary issued to appellee Mary Douglas Reese, a cousin, the executrix designated by his will. His widow, being dissatisfied with the terms of said will, petitioned to have same set aside upon two grounds: (1) that Bauer was mentally incompetent at the time he executed the will; and (2) that she is the pretermitted spouse of decedent. On motion of appellee the probate court struck the second ground of the petition, and after taking extensive testimony pertaining to the first ground dismissed the petition with prejudice. The widow now appeals.
The evidence herein reflects that Bauer's parents were exceptionally frugal persons who successfully instilled that characteristic into their son, George F. Bauer, the decedent. He lived with them until their death and thereafter continued to live on the home place, which was permitted to become impoverished and unkept in its appearance and furnishings. In September of 1955 George and Susie were married, both being well along in their adult years. Approximately one year later, they became separated and on February 22, 1957, were divorced. After living apart for slightly more than one year, they were remarried on October 26, 1957, and continuously lived together as man and wife until George's death July 10, 1962.
On the question of decedent's mental capacity at the time of executing the will his widow presented extensive proofs showing that he was a stingy man, one who did not want anything changed around the house from the way his mother had left it, that the house had only one electrical outlet and she had to cook on a kerosene stove. Her primary contention on the first ground for revocation is that since her husband was worth more than $300,000 (most of which he inherited from his parents) his frugal manner of living demonstrates mental incompetency. She also testified that on September 10, 1956, decedent dragged her into the kitchen and threatened to kill her, and insists that such an outburst on his part reflects mental instability rendering him incompetent three days later to execute the will. Decedent's doctor, lawyer, stockbroker and others testified that he was an astute businessman who knew what he was doing when he made his will. The record contains evidence amply supporting the trial judge's conclusion that appellant wholly failed to prove mental incompetency on the part of the testator.
Appellant's remaining contention is that she is a pretermitted spouse within the purview of section 731.101, Florida Statutes, F.S.A., so that the will executed by decedent in September 1956, which was prior to the decree of divorce terminating their first marriage, is inoperative to delimit the interest in his estate to which she is entitled as his widow in consequence of their remarriage and his death without having made another will. Otherwise stated, it is her position that by virtue of the statute the decree of divorce rendered null and void all provisions of the will providing benefits for her, and that their remarriage was inoperative in itself to renew or validate the same. We agree.
Section 731.101, Florida Statutes, F.S.A., provides:
"All wills offered for and admitted to probate subsequent to June 11, 1951, made by husband or wife who have been divorced from each other subsequent to the date of said will, shall be made null and void by means of said *680 divorce insofar as said will affects the surviving divorced spouse."
It is apparent that enactment of this statute (c. 26914, Acts 1951) was induced by the fact that under the prior case law of this jurisdiction the fact of divorce and property settlement did not impliedly revoke a prior will or bequest benefiting the divorced spouse. See Ireland v. Terwilliger, 54 So.2d 52 (Fla. 1951), followed in Davis v. Davis, 57 So.2d 8 (Fla. 1952).
We find no special equities in this case invoking anything other than a literal construction and application of the statute. We are aware that in Conascenta v. Giordano, 143 So.2d 682 (Fla.App. 1962), it was held that where a literal interpretation of the statute would lead to an unreasonable conclusion or purpose not designated by the legislature, it is the court's duty to interpret the statute in accordance with the clear purpose and intent of the legislature. We think our conclusion supports that rule. Indeed, in Conascenta the statute was applied to prohibit the pretermitted spouse from taking under the will.
Section 731.101, Florida Statutes, F.S.A., is clear, concise and unambiguous to a specific purpose. There is no room for exceptions contrary to its plain provisions, hence we have no difficulty in literally applying it in this case and in recognizing the appellant as the lawful widow of the deceased in like manner as if the first marriage never existed. The provisions of F.S. Section 731.10, F.S.A., have no bearing upon the issue on this appeal.
As said by this court in Rogers v. Rogers, 152 So.2d 183 (1963):
"The implication of these decisions is that in the absence of clear legislative intent, the courts will not create or destroy a testamentary disposition on the theory that the result accords with the natural desires of the deceased. These decisions provoked the enactment of F.S. 731.101, F.S.A." (Emphasis supplied.)
We do not recede from that pronouncement in any particular. The fact here is that the legislative intent is clear and affords no basis for gerrymandering the legislative will by fiat of this court.
We are convinced that the legislative intent behind F.S. § 731.101, F.S.A., was not to invest married persons with a spigot-like means to turn their testamentary attitudes off and on at random by the device of executing a will, following it with divorce, following it by remarriage, and so on ad infinitum. The legislative purpose was unquestionably directed toward curing the incongruous situation resulting when, as is usually the case, the divorced parties do not make successive excursions upon the sea of matrimony and the testator dies leaving a will extant containing benefits to the divorced spouse. The legislature might well have had in mind the fact that some deaths occur before the testator has had an opportunity following divorce to reframe or destroy the existing will or has simply neglected to do so; that if he desires the divorced spouse to participate in his estate, the better rule is to require a new will to be executed to that effect.
Perkins v. Brown, 158 Fla. 21, 27 So.2d 521, relied on by appellee, was decided prior to enactment of F.S. § 731.101, F.S.A., so the conclusions therein were not based upon considerations applicable to the case on review. In Perkins the testatrix omitted any reference to her husband and the statute there involved (F.S. § 731.10, F.S.A.) insures that the surviving spouse shall share in the testator's estate to the extent that such spouse would have been entitled if the testator had died intestate "unless provision has been made for such spouse * * * in the will." F.S. Section 731.10, F.S.A., has no relation to the circumstances involved on this appeal and is clearly inoperative to reactivate the provisions in favor of appellant as contained in the will made during the term of her first marriage to the deceased. The purpose of F.S. § 731.10, F.S.A., is clearly distinguishable *681 from that of F.S. § 731.101, F.S.A., and these statutes are to be independently construed.
The power of the legislature to limit testamentary dispositions and to control the descent and distribution of estates of decedents is well recognized. Statutes governing descent and distribution are the product of the experience of the ages and commonly accepted standards of social behavior. When persons once divorced remarry they do so "for better or for worse" no less than in the first instance. Neither should be permitted to have his or her fingers crossed by the secret weapon of a will executed in the climate of their former marriage.
For the reasons stated, that part of the order striking the second ground upon which appellee relies for relief is vacated, and this cause is remanded for further proceedings consistent herewith.
CARROLL, DONALD K., J., concurs.
RAWLS, J., dissents.
RAWLS, Judge (dissenting).
I am convinced that the legislative intent behind Section 731.101 was not to invest a spigot-like means for courts to turn off and on at random the effectuation of a testator's intent. I am likewise convinced that it is not the function of this Court to assume the considerations that motivated the first marriage, the second marriage, or the testator in limiting the portion of his estate devised to his spouse. Had the testator and appellant continued the marital bonds of their first marriage  either in peaceful domesticity or had they daily engaged in acts of marital fractiousness  or had they been permanently separated  or had many such other events transpired, this bona fide signed, sealed and delivered will representing a competent testator's intent and complying with each and every legal technicality, would have been duly probated by the courts of this State. Now, the majority of this Court declares that the legislature by statute has promulgated its intent to the effect that if the same man and the same woman are divorced and subsequently remarry, such divorce renders the man's will executed during their first coverture, ineffectual.
The cardinal rule for statutory construction is that courts must seek out and determine legislative intent, and no literal interpretation should be given that leads to an unreasonable conclusion or to a purpose not intended by the lawmakers.[1] The history of an enactment is material as an aid in determining the legislative intent and courts are required to look at the history as well as the objective and purpose of the legislature.[2] Judge Sturgis, speaking for this Court in Rogers v. Rogers[3] in examining the background of the subject statute, stated:
"In Ireland v. Terwilliger, 54 So.2d 52 (Fla. 1951), decided prior to the enactment of F.S. 731.101, F.S.A., followed in Davis v. Davis, 57 So.2d 8 (Fla. 1952), it was held that the mere fact of a divorce and property settlement does not impliedly revoke a prior will or bequest. In so holding, the Florida Supreme Court subscribed to the view announced in Gartin v. Gartin, 371 Ill. 418, 21 N.E.2d 289, 290:
"`It is only fair to assume that if the legislature had intended that a divorce should effect a revocation of a will it would have so expressly provided. The action of the legislature, in expressly providing the means for effecting a revocation of a will precludes the application of the doctrine of implied revocation in case of divorce.'

*682 "The implication of these decisions is that in the absence of clear legislative intent, the court will not create or destroy a testamentary disposition on the theory that the result accords with the natural desires of the deceased. These decisions provoked the enactment of F.S. 731.101, F.S.A." [Emphasis supplied.]
Thus, an analysis of this decision and the cases cited therein leads one to the conclusion that the legislature was provoked into enacting the subject statute in order to preclude a divorced spouse from inheriting by reason of a testamentary instrument executed by the former spouse. Judge Hendry, speaking for the District Court of Appeal, Third District, in Conascenta v. Giordano[4] expressed my view of the subject statute when he stated on page 684:
"Where, as in the case at bar, a literal interpretation of the statute would lead to an unreasonable conclusion or purpose not designated by the legislature, it is the court's duty to interpret the statute in accord with the clear purpose and intent of the legislature. See Ozark Corporation v. Pattishall, 135 Fla. 610, 185 So. 333; State v. City of Miami, 101 Fla. 292, 134 So. 608; Maryland Casualty Company v. Marshall, Fla.App. 1958, 106 So.2d 212."
I conclude that § 731.101 is not applicable to this cause.
Appellant further insists that should the court find that § 731.101 does not apply, then the provisions of § 731.10, Florida Statutes, F.S.A., grants to her the entire estate of her deceased husband because his will made no provision for her as his spouse and did not disclose an intention not to make such a provision, and no marriage contract existed. Section 731.10 provides:
"When a person marries after making a will and the spouse survives the testator, such surviving spouse shall receive a share in the estate of the testator equal in value to that which such surviving spouse would have received if the testator had died intestate, unless provision has been made for such spouse by marriage contract or unless such spouse is provided for in the will, or unless the will discloses an intention not to make such provision. The share of the estate which is assigned to such pretermitted spouse shall be raised in accordance with the order of appropriation of assets set forth in this law."
Perkins v. Brown[5] decided by our Supreme Court in 1946, is the closest case in point construing § 731.10 as same applies to the instant facts. There, a widow, Mrs. Perkins, married one Brown in 1937; thereafter during coverture, she executed a will devising all of her property to her daughter by a former marriage. In 1939, the Browns were divorced; the parties were reunited several months later and lived together as husband and wife until Mrs. Brown's death in 1945. The Supreme Court, in reversing the probate court's finding that Brown was a pretermitted spouse within the meaning of the statute, examined the background of the execution of the will; so, appellant in the instant case urges that an examination of the circumstances attendant to the execution of the will here considered, present material factual distinctions which require a different result than that in the Perkins case. I do not agree. Here, decedent executed his will during coverture. Whether or not he was separated either temporarily or permanently from his wife, at the time of executing his will is not material. It is not the function of courts to delve into the particular emotions of a competent testator at the time of formulating his last will and testament and thereby determine whether he made proper bequests of his worldly goods.
If a testator is mentally competent to make bequests, then he is mentally competent *683 to limit same, as was done in the instant cause. Courts should not substitute their judgment for that of the testator since that is a function of the legislature.[6] Bauer was mentally competent to execute his last will and testament while he was married to appellant. He obviously provided for his spouse in said will when he left her his homestead, although a divorce subsequently intervened. At the time of decedent's death, his lawful spouse was one and the same person as provided for in his last will and testament. Therefore, the intention of the testator is clearly disclosed by the language of the will, and the subject statutes are not applicable.
I, therefore, dissent.
NOTES
[1] 30 Fla.Jur., Statutes §§ 79 and 97.
[2] Sunshine State News Co. v. State, 121 So.2d 705 (Fla.App.3d, 1960).
[3] Rogers v. Rogers, 152 So.2d 183 (Fla. App.1st, 1963).
[4] Conascenta v. Giordano, 143 So.2d 682 (Fla.App.3d, 1962).
[5] Perkins v. Brown, 158 Fla. 21, 27 So.2d 521 (1946).
[6] For example, see F.S. § 731.34, F.S.A., providing for dower.